## DEAN LEAVITT *vs.* BROCKTON HOSPITAL, INC., & others.[1]

Plymouth. February 5, 2009. - June 9, 2009.

Present: MARSHALL, C.J., IRELAND, SPINA, COWIN, CORDY, BOTSFORD, & GANTS, JJ.

*Negligence,* Standard of care, Duty to prevent harm, Hospital, Proximate cause, Duty owed to rescuer. *Proximate Cause.*

In an action brought by a police officer (plaintiff) against a hospital and two of its registered nurses (collectively, defendants), alleging that the defendants owed the plaintiff a duty of care to detain a sedated patient in its care and to prevent such a patient from leaving the hospital without an escort, the judge did not err in granting the hospital's motion to dismiss for failure to state a claim, based on the conclusion that the hospital did not owe any such duty to the plaintiff, an unrelated third party who was injured while responding to an emergency report of a pedestrian accident involving the patient, where, as a matter of general negligence, there is no duty to control another person's conduct to prevent that person from causing harm to a third party; and where there was no special relationship between the hospital and the patient that would give rise to such a duty in the circumstances of this case. [39-44] COWIN, J., concurring in the judgment, with whom CORDY and BOTSFORD, JJ., joined.

In an action brought by a police officer (plaintiff) against a hospital and two of its registered nurses (collectively, defendants), alleging that the defendants owed the plaintiff a duty of care to detain a sedated patient in its care and to prevent such a patient from leaving the hospital without an escort, the judge did not err in granting the hospital's motion to dismiss for failure to state a claim, where the plaintiff's injury, suffered while responding to an emergency report of a pedestrian accident involving the patient, fell outside the scope of foreseeable risk arising from the hospital's alleged misconduct. [44-47]

CIVIL ACTION commenced in the Superior Court Department on October 3, 2007.

A motion to dismiss was heard by *Frank M. Gaziano,* J.

The Supreme Judicial Court granted an application for direct appellate review.

[1]Sheila Smith and Karen Sullivan. Smith and Sullivan are registered nurses who worked at Brockton Hospital, Inc. For ease of reference, we refer to all of the defendants collectively as the "hospital."

*Jeffrey S. Beeler* for the plaintiff.

*Daniel J. Buoniconti* for the defendants.

The following submitted briefs for amici curiae:

*Michael D. Riseberg & Chad P. Brouillard* for Massachusetts Defense Lawyers Association.

*Mary Jane McKenna & J. Michael Conley* for Massachusetts Academy of Trial Attorneys.

*John J. Barter* for Professional Liability Foundation, Ltd.

MARSHALL, C.J. The plaintiff, Dean Leavitt, is a police officer for the town of Whitman. While on duty on November 1, 2004, he responded to an emergency report of a pedestrian-automobile accident. On his way to the scene of the reported accident, Leavitt's police cruiser was hit by another vehicle.[2] Leavitt was seriously and permanently injured. It subsequently was determined that the pedestrian involved in the accident to which Leavitt was responding had earlier that day undergone a colonoscopy at the Brockton Hospital, Inc. (hospital); the patient was struck by a vehicle while walking home from the hospital.

Leavitt alleges that the hospital and two of its registered nurses owe him a duty of care and committed a breach of that duty when it "released" the patient without an escort — allegedly in violation of hospital policy — after the patient had received sedating medication for his colonoscopy.[3] On the hospital's motion to dismiss for failure to state a claim on which relief can be granted, Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974), a judge in the Superior Court concluded that the hospital did not owe Leavitt, an unrelated third party, any duty of care, and allowed the hospital's motion. Judgment entered for the hospital, and Leavitt appealed. We granted his application for direct appellate review. We affirm.[4]

---

[2] The vehicle that struck Dean Leavitt's cruiser was not involved with the pedestrian-automobile accident to which Leavitt was responding.

[3] The complaint does not allege that the patient was impaired by any medications when he left the hospital or when he was hit by the vehicle while walking home, although that is implicit in the relief Leavitt seeks.

[4] We acknowledge the amicus briefs filed by the Massachusetts Academy of Trial Attorneys in support of Leavitt, and by the Massachusetts Defense Lawyers Association and the Professional Liability Foundation, Ltd., in support of the hospital.

I

The allegations concerning the pedestrian accident to which Leavitt was responding, which we take as true, *Nader* v. *Citron*, 372 Mass. 96, 98 (1977),[5] are as follows. The patient underwent a colonoscopy at the hospital on November 1, 2004. In connection with that procedure, he was administered fifty milligrams of Meperidine (Demerol) and two milligrams of Midazolam (Versed), narcotics "specifically used as sedatives and anesthetics" and "known to have the effect of causing tiredness, weakness, problems with coordination, and the inability to think clearly." The policy of the hospital, as well as (it is alleged) "good and accepted practices," required that colonoscopy patients be escorted when leaving the hospital while under the influence of narcotics. The patient was discharged from the hospital without an escort,[6] and shortly thereafter, as he was walking home, he was struck and killed by a car on the side of the road.

II

To prevail on his negligence claims, Leavitt must prove that the hospital owed him a duty of reasonable care, that the hospital committed a breach of that duty, that damage resulted, and that there was a causal relation between the breach of duty and the damage. See *Jupin* v. *Kask*, 447 Mass. 141, 146 (2006), citing J.R. Nolan & L.J. Sartorio, Tort Law § 11.1 (3d ed. 2005);

---

[5]After the judge had ruled on the hospital's motion to dismiss, we adopted as applicable to our civil rules the United States Supreme Court's revision of the standard for reviewing the adequacy of a complaint challenged by a motion to dismiss pursuant to Fed. R. Civ. P. 12 (b) (6). See *Iannacchino* v. *Ford Motor Co.*, 451 Mass. 623, 635-636 (2008), quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 557 (2007) ("What is required at the pleading stage are factual 'allegations plausibly suggesting [not merely consistent with]' an entitlement to relief . . ."). The hospital does not ask that we apply the new, "stricter" standard. See *Flomenbaum* v. *Commonwealth*, 451 Mass. 740, 751 n.12 (2008). The complaint would not survive the hospital's motion to dismiss under either standard.

[6]Leavitt alleges that the individual defendants, Sullivan and Smith, "negligently and carelessly" released the patient without an escort, violated hospital policy and a physician's orders in so doing, and failed to take "reasonable and appropriate steps" to ensure that the patient was properly escorted when released. We do not regard as "true" legal conclusions cast in the form of factual allegations. *Schaer* v. *Brandeis Univ.*, 432 Mass. 474, 477-478 (2000), citing *Judge* v. *Lowell*, 160 F.3d 67, 77 (1st Cir. 1998).

*Bennett* v. *Eagle Brook Country Store, Inc.*, 408 Mass. 355, 358 (1990). The hospital argues that the motion judge correctly dismissed the complaint because Leavitt cannot establish the first element, duty, as a matter of law. We agree.

Whether a duty of care exists is a question of law, *Jupin* v. *Kask, supra,* and an appropriate subject of a motion to dismiss pursuant to rule 12 (b) (6). See *O'Meara* v. *New England Life Flight, Inc.,* 65 Mass. App. Ct. 543, 544 (2006) (affirming dismissal under rule 12 [b] [6] on ground that defendants owed no duty to plaintiff). See also *Remy* v. *MacDonald,* 440 Mass. 675, 677 (2004) ("If no such duty exists, a claim of negligence cannot be brought").

Leavitt contends that a duty of care exists under any one of three theories: general negligence; a "special relationship" the hospital had with the patient and with Leavitt, respectively; and a voluntary assumption of a duty of care by the hospital to protect third parties from harm caused by "impaired" patients. We reject each theory. Reduced to its essence, each rests on a proposition that a hospital or medical provider owes a duty of care to a nonpatient third party to detain a sedated patient in its care and to prevent such a patient from leaving the hospital without an escort.[7]

Citing *Coombes* v. *Florio,* 450 Mass. 182, 213-214 n.6 (2007) (Cordy, J., dissenting), Leavitt argues that the hospital's duty to him under the first two theories (general negligence and special relationship) rests on the "control" it had over the patient before he left the hospital. The proposition is unpersuasive.[8] Absent a special relationship with a person posing a risk, there is no duty

---

[7]This is not a case of a physician or medical provider's failure to warn a patient. See, e.g., *Coombes* v. *Florio,* 450 Mass. 182, 191 (2007) (Ireland, J., concurring) (liability to third parties limited to failure of physician to warn patient "of the effects of treatment"); *id.* at 196 (Greaney, J., concurring in part and dissenting in part) (liability to third parties limited to failure of physician to warn patient in circumstances in which physician "has knowledge of a danger that may be posed to others from a patient's decision to operate a motor vehicle while under the influence of prescribed medication"). Leavitt has not alleged (and does not argue here) that the hospital failed to warn the patient of any dangers of leaving without an escort.

[8]Leavitt's reliance on Justice Cordy's discussion of "present control" in *Coombes* v. *Florio, supra* at 213-214 n.6 (Cordy, J., dissenting), is misplaced. As noted earlier, see note 7, *supra,* that case concerned a duty to warn the

to control another person's conduct to prevent that person from causing harm to a third party, and as we shall explain, there is no special relationship between the hospital and the patient that would give rise to such a duty in the circumstances of this case. See Restatement (Second) of Torts § 315 (a) (1965).[9] See also Restatement (Third) of Torts: Liability for Physical Harm § 41 (Proposed Final Draft No. 1, 2005).[10] Consistent with that principle, this court has recognized a duty to control the conduct of another for the benefit of a third party in narrowly prescribed

patient, as did the cases on which Justice Cordy relied. See *Hardee* v. *Bio-Medical Applications of S.C., Inc.*, 370 S.C. 511, 516 (2006); *Joy* v. *Eastern Me. Med. Ctr.*, 529 A.2d 1364, 1366 (Me. 1987). Cf. *Wilschinsky* v. *Medina*, 108 N.M. 511, 515-516 (1989) (limiting duty to circumstances in which patient drives automobile from doctor's office). None recognizes any duty to detain a patient.

[9]Restatement (Second) of Torts § 315 (1965) provides in pertinent part: "There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct . . . ." The special relationships between the actor and the third person that require the actor to control the conduct of the third person are stated in §§ 316-319. *Id.* at § 315 comment c. Sections 316-318 set forth three specific relationships imposing such a duty — parent and dependent children, master and servant, and possessor of land or chattels and licensee — none of which is applicable here.

Section 319, in turn, addresses the duty of those in charge of a person who has "[d]angerous [p]ropensities," and provides that, "[o]ne who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm." Leavitt does not argue that § 319 applies in the circumstances of this case. In any event we agree with the reasoning of the court in *Hoehn* v. *United States*, 217 F. Supp. 2d 39, 47 (D. D.C. 2002), that medicated patients do not have "dangerous propensities" simply because they are medicated, and that a medical facility does not "take charge" of a patient undergoing a voluntary colonoscopy within the meaning of § 319.

[10]Restatement (Third) of Torts: Liability for Physical Harm § 41 (Proposed Final Draft No. 1, 2005), titled "Duty to Third Persons Based on Special Relationship with Person Posing Risks," replaces §§ 315(a), 316, 317, and 319 of the Restatement (Second), see note 9, *supra*, and enumerates four special relationships that give rise to a "duty of reasonable care to third persons": "(1) a parent with dependent children, (2) a custodian with those in its custody, (3) an employer with employees when the employment facilitates the employee's causing harm to third parties, and (4) a mental health professional with patients." *Id.* at § 41 & comment a, at 778, 779. The American Law Institute's Council and its membership have given final approval to the substance of the Proposed Final Draft, with the exception of certain comments

circumstances. See, e.g., *Jean W.* v. *Commonwealth*, 414 Mass. 496, 513-514 (1993) (Liacos, C.J., concurring) (Department of Correction and parole board "may have been in a special relationship with [the released prisoner] because of their custody of and control over him"). We have also recognized such a duty based, in part, on statutory responsibilities. See, e.g., *Irwin* v. *Ware*, 392 Mass. 745 (1984) (town liable to motorist injured by intoxicated driver whom police officer had permitted to drive on highway).[11] We have not previously recognized, and do not now recognize, a duty to a third person of a medical professional to control a patient (excluding a patient of a mental health professional, see note 10, *supra*) arising from any claimed special relationship between the medical professional and the patient.[12] In so deciding we are in accord with courts in other jurisdictions

to §§ 27 and 28 not at issue in this case. We refer hereinafter to the approved Final Draft as the Restatement (Third) of Torts.

[11]Relying on *Irwin* v. *Ware*, 392 Mass. 745 (1984), Leavitt argues that a special relationship existed between the hospital and *himself* sufficient to warrant a duty of care to him. That reliance is misplaced. In the *Irwin* case, this court concluded that "there is a special relationship between a police officer who negligently fails to remove an intoxicated motorist from the highway, and a member of the public who suffers injury as a result of that failure." *Id.* at 762. This conclusion was based, in part, on the existence of "statutes requiring police officers to act." *Id.* at 759. The hospital is not obligated by statute or otherwise to detain a patient undergoing a voluntary procedure.

[12]In *Coombes* v. *Florio, supra*, a majority of the justices of this court rejected the claim that a duty to third parties to warn a patient derived from a special relationship between the physician and patient. See *id.* at 187 (Ireland, J., concurring) (special relationship theory "inapplicable"); *id.* at 202 (Marshall, C.J., dissenting) (physician owed no duty); *id.* at 207 n.3 (Cordy, J., dissenting) (special relationship argument is "without merit"). Any claimed duty to control a patient similarly cannot derive from any special relationship between physician and patient. See Restatement (Third) of Torts, *supra* at § 41, Reporters' Note to comment h, at 808-809 ("Some courts have reasoned that because a physician does not have control over the patient, no special relationship exists. . . . That reasoning is most persuasive when the plaintiff claims defendant's negligence in failing to control the patient"). The Restatement (Third) of Torts also states in pertinent part, "[n]o black-letter provision imposes an affirmative duty to third parties on non-mental-health physicians." *Id.* at § 41 comment h, at 789. While comment h "addresses that question" and states that the absence of the physician-patient relationship from the enumerated list of relationships in this section "does not mean that physicians have no affirmative duty to third parties," *id.* at 790, the Restatement ultimately "leaves to further development the question of when physicians have a duty . . . to protect third persons." *Id.* at 790-791.

that have addressed the question. See, e.g., *Hoehn* v. *United States*, 217 F. Supp. 2d 39, 47, 48 (D. D.C. 2002) (where patient was "voluntary outpatient," hospital "had no right or ability to control her" and "owed no duty to unidentified third parties to control [the patient] and prevent her from driving upon release"); *Young* v. *Gastro-Intestinal Ctr., Inc.*, 361 Ark. 209, 214-216 (2005) (rejecting argument that medical center's policy, which required staff to ensure that no colonoscopy patient was sedated unless patient had another person to drive patient from hospital, imposed duty to control patient and restrict her ability to leave medical center); *Myers* v. *Quesenberry*, 144 Cal. App. 3d 888, 894 n.3 (1983) (rejecting theory of physician liability based on failure to control patient's conduct by permitting her to drive: such liability "certainly cannot be imposed" in conventional doctor-patient relationship); *Shortnacy* v. *North Atlanta Internal Med., P.C.*, 252 Ga. App. 321, 325-326 (2001) (physician had no duty to third party to control patient under Restatement [Second] of Torts § 315).[13,14] Cf. *Hoehn* v. *United States, supra* at 47 (fact that patient who decided to drive while medicated "may have

[13]Leavitt argues that this case is "somewhat similar to a licensed commercial establishment that knowingly overserves an intoxicated person and then discharges [that person] onto the roadway where they cause plainly foreseeable carnage." The analogy is misplaced. In a negligence case against a tavern owner or bartender, liability is premised on a defendant's failure to refrain from serving liquor to an intoxicated patron in circumstances (a) in which the defendant should have known that the patron was intoxicated and (b) where the patron's subsequent operation of a motor vehicle was reasonably foreseeable. See, e.g., *Cimino* v. *Milford Keg, Inc.*, 385 Mass. 323, 331-332 & n.9 (1982). Liability is not premised on a tavern owner or bartender's "discharg[ing]" an intoxicated person "onto the roadway." See *O'Gorman* v. *Antonio Rubinaccio & Sons*, 408 Mass. 758, 761-762 (1990) (bar owner who did not serve alcohol to already intoxicated patron had no right or duty to prevent intoxicated patron from driving patron's vehicle away from defendant's bar); *Shortnacy* v. *North Atlanta Internal Med., P.C.*, 252 Ga. App. 321, 327 (2001), quoting *Armstrong* v. *State*, 244 Ga. App. 871, 873 (2000) (law does not mandate "provider of alcoholic beverages must prevent an intoxicated person from driving"); *McKeown* v. *Homoya*, 209 Ill. App. 3d 959, 963 (1991) ("a tavern has no duty to restrain a patron from driving away no matter how intoxicated that individual may be").

[14]Leavitt cites to cases from other jurisdictions that, he argues, support his claim that a medical provider has a duty to third parties in circumstances similar to this case. None establishes that a hospital has a duty to third parties to restrain or prevent a patient from leaving the hospital. Some of the cases on which he relies concern a duty to warn a patient, see, e.g., *McKenzie* v.

created a dangerous situation" does not "compel the conclusion that medicated patients in general are inherently dangerous").[15] The hospital owed no duty to Leavitt to control or detain the patient.

## III

The hospital also claims that it should not be held liable on a separate, independent ground: the injury to Leavitt was not "caused" by any action on its part. We agree. Leavitt's injury was not "caused" by the hospital because it falls outside the scope of foreseeable risk arising from any negligent conduct that would make the hospital's alleged misconduct tortious.[16]

As noted earlier, this case is here on the allowance of the hospital's motion to dismiss. Although causation is generally left to a jury to decide, *Mullins* v. *Pine Manor College*, 389 Mass. 47, 58 (1983), it may be determined as a question of law where there is no set of facts that could support a conclusion that the plaintiff's injuries were within the scope of liability. See *Kent* v. *Commonwealth*, 437 Mass. 312, 320, 322 (2002) (scope of liability ["proximate cause"] determined on motion to dismiss);

*Hawai'i Permanente Med. Group, Inc.,* 98 Haw. 296, 308 (2002); *Burroughs* v. *Magee,* 118 S.W. 3d 323, 333 (Tenn. 2003), with some of those expressly distinguishing a duty to warn from a duty to control a patient, see *Myers* v. *Quesenberry,* 144 Cal. App. 3d 888, 894 n.3 (1983) (rejecting theory that physicians were liable for failure to "control [patient's] conduct by permitting her to drive to and from" hospital); *Gooden* v. *Tips,* 651 S.W. 2d 364, 370 (Tex. Ct. App. 1983) ("we do not hold that a duty arose on the part of [the physician] to *control* the conduct of his patient"; "[w]e do not hold [the physician] had a duty to *prevent* [the patient] from driving, if she so desired" [emphases in original]). Other cases involve allegations that a physician negligently diagnosed or treated a patient, an issue not raised here. See, e.g., *Cheeks* v. *Dorsey,* 846 So. 2d 1169, 1173 (Fla. Dist. Ct. App. 2003) (physician allegedly failed to verify whether patient was under influence of another drug before administering methadone).

[15]Leavitt's de minimis argument as to the third theory — that the hospital voluntarily assumed a duty of care to nonpatient third parties — lacks merit. A similar argument was rejected in *Coombes* v. *Florio,* 450 Mass. 182 (2007), and Leavitt provides no reason for us to revisit it. See *id.* at 187 (Ireland, J., concurring); *id.* at 200-201 & n.5 (Greaney, J., concurring in part and dissenting in part); *id.* at 207 n.2 (Cordy, J., dissenting).

[16]See Restatement (Third) of Torts, *supra* at § 29 comment b, at 576: "the term 'proximate cause' is a poor one to describe limits on the scope of liability. It is also an unfortunate term to employ for factual cause or the combination of factual cause and scope of liability."

*Stamas* v. *Fanning*, 345 Mass. 73, 76 (1962) ("There are situations where it can be said, as matter of law, that a cause is remote rather than proximate").[17] Cf. *Poskus* v. *Lombardo's of Randolph, Inc.*, 423 Mass. 637, 638 (1996) (causation resolved on motion for summary judgment); *Foley* v. *Boston Hous. Auth.*, 407 Mass. 640, 646 (1990) (same).

The law does not impose liability for all harm factually caused by tortious conduct.[18] See Restatement (Third) of Torts, *supra* at special note on proximate cause, at 574. Liability for conduct obtains only where the conduct is both a cause in fact of the injury and where the resulting injury is within the scope of the foreseeable risk arising from the negligent conduct.[19] See *id.* at § 29, at 575; *Kent* v. *Commonwealth*, *supra* at 320 (plaintiff must show cause in fact and that injury was "foreseeable result" of conduct); *Foley* v. *Boston Hous. Auth.*, *supra* (no causation where "harm which occurred was not within the scope of foreseeable risk to the victim").[20]

---

[17]See also Restatement (Third) of Torts, *supra* at § 29, Reporters' Note to comment e, at 614 ("in some recurring factual situations in which the specific details are not critical to the analysis or the outcome, courts can provide a scope-of-liability rule applicable to all such cases. Some of these cases involve secondary harm — harm that occurs after the primary hazard posed by the tortious conduct has already occurred, such as injuries to a person attempting to rescue someone injured by tortious conduct . . .").

[18]We assume, arguendo, that any negligence by the hospital was a cause in fact of Leavitt's injury.

[19]The Restatement (Third) of Torts describes this limitation on liability as the "risk standard," rather than "proximate cause." Restatement (Third) of Torts, *supra* at § 29 comment d, at 580-581. See *id.* at special note on proximate cause, at 574. Applying the risk standard requires consideration of "the risks that made the actor's conduct tortious" and "whether the harm for which recovery is sought was a result of any of those risks." *Id.* at § 29 comment d, at 579-580. As applied to this case, assuming the hospital had a duty to prevent the patient from leaving its premises, the risk standard would limit the hospital's liability to foreseeable harms created by the risk that made the conduct (release of the patient) negligent: the risk of harm to the patient, and to others injured by the patient as a result of the patient's medicated condition. Stated differently, the reason a hospital might be held liable to a third party for releasing a medicated patient is not to protect a police officer injured in an accident unrelated to the patient, but to prevent the patient from doing harm to himself or others. See *Palsgraf* v. *Long Island R.R.*, 248 N.Y. 339, 344 (1928) ("risk imports relation; it is risk to another or to others within the range of apprehension").

[20]Restatement (Third) of Torts, *supra* at § 29 comment j, at 594, provides

In *Poskus* v. *Lombardo's of Randolph, Inc., supra* at 640-641, this court rejected the argument that a nightclub that negligently permitted a customer's vehicle to be stolen was liable to a police officer who was injured during a subsequent chase involving the operator of the stolen vehicle. The court did so because "the reasonably foreseeable risk of harm to others created by [the nightclub's] negligence did not include harm caused when the thief resisted arrest." *Id.* at 640. We reach the same conclusion here: the harm that befell Leavitt — an injury from a collision not involving the patient — arose not from the "same general type of danger" (harm to the patient or to those injured by the patient as a result of being released while medicated) that the hospital allegedly should have taken reasonable steps to avoid, but from "some other danger" (the collision between the police cruiser and another vehicle unrelated to the patient). See Restatement (Third) of Torts, *supra* at § 29, Reporters' Note to comment b, at 609 (proposed jury instructions). While a third party nonpatient directly injured by a medicated patient who drives an automobile from a hospital may be within the scope of foreseeable risk, a police officer injured in an accident in which the patient is not involved is outside that scope. Cf. *Whittaker* v. *Saraceno*, 418 Mass. 196, 200 (1994) (landowner not liable for "random violent criminal conduct" on landowner's property even though "the possibility of criminal conduct occurring is present in almost every aspect of daily life" and, "[i]n that sense the possibility of a violent attack is always able to be foreseen"). A contrary conclusion would require "inference upon inference." *Griffiths* v. *Campbell*, 425 Mass. 31, 35 (1997) (landlord's failure to act on suspicion of illegal drug activity on premises did not

in relevant part: "Many jurisdictions employ a 'foreseeability' test for proximate cause, and in negligence actions such a rule is essentially consistent with the standard [of risk] set forth in this Section." See note 19, *supra.* "Properly understood, both the risk standard and a foreseeability test exclude liability for harms that were sufficiently unforeseeable at the time of the actor's tortious conduct that they were not among the risks — potential harms — that made the actor negligent. Negligence limits the requirement of reasonable care to those risks that are foreseeable. . . . Thus, when scope of liability arises in a negligence case, the risks that make an actor negligent are limited to foreseeable ones, *and* the factfinder must determine whether the type of harm that occurred is among those reasonably foreseeable potential harms that made the actor's conduct negligent" (emphasis added). Comment j, *supra.*

make landlord liable for harm to police officer killed during raid on premises). See Restatement (Third) of Torts § 29 comment d, at 579-580 ("scope of liability" serves to avoid "what might be unjustified or enormous liability by confining liability's scope to the reasons for holding the actor liable in the first place").

Leavitt also argues that the hospital is liable under the "rescue" doctrine, quoting Judge Cardozo: "Danger invites rescue." *Wagner* v. *International Ry. Co.*, 232 N.Y. 176, 180 (1921). Massachusetts has recognized the rescue doctrine, albeit in circumstances very different from those presented here. *Hopkins* v. *Medeiros*, 48 Mass. App. Ct. 600, 602-612 (2000) (police officer who responded to call for assistance injured after arriving at scene and attempting to assist another officer). However, not all injuries to rescuers are within the scope of foreseeable risk: liability does not attach for injuries suffered as a result of "risks that would not be anticipated to arise from the rescue." Restatement (Third) of Torts, *supra* at § 32 comment c, at 653. Leavitt cites no authority to support his claim that a collision between a police cruiser and a vehicle unrelated to the accident to which the officer in the cruiser was responding is a risk that would be anticipated to arise from the rescue. We decline to extend the rescue doctrine to encompass such a risk.

IV

For the foregoing reasons, the judgment of the Superior Court is affirmed.

*So ordered.*

Cowin, J. (concurring in the judgment, with whom Cordy and Botsford, JJ., join). I join in parts I and II of the opinion of the court. Because it is not necessary to reach the issue of causation in this case, I do not join in part III.