Smith, Herman J., J.
The plaintiff, Marilyn DeC-ourcey (“DeCourcey”), administratrix of the estate of her son, Paul M. Luck (“Luck”), brought this action against the defendant, Joseph H. Albeck, M.D. (“Dr. Albeck”), Luck’s psychiatrist, alleging negligence and wrongful death. Before the court is Dr. Albeck’s motion for summaiy judgment. For the following reasons, Dr. Albeck’s motion is ALLOWED.
BACKGROUND
The relevant facts, taken in the light most favorable to the plaintiff, are as follows. Dr. Albeck began psychiatric care and treatment of the decedent, Luck, in the fall of 2002. He diagnosed Luck as suffering from anxiety and depression (with a secondary diagnosis of alcohol and cocaine abuse, which was in remission). Over the course of nine months of treatment, Dr. Albeck prescribed different medications to Luck including Wellbutrin, Klonopin, Lexapro, Ativan, Clonazepam, Alprazolam, Effexor and Luvox.
The parties dispute whether Dr. Albeck counseled the decedent to abstain from alcohol and drugs. Neither the decedent’s live-in girlfriend, Monique Bonhomme (Bonhomme), nor any member of the decedent’s family observed the decedent abusing drugs or alcohol during the time of Dr. Albeck’s treatment. According to Dr. Albeck, the decedent reported having one “relapse” in February 2003, but was otherwise not abusing drugs or alcohol.
Luck was scheduled for an in-person appointment with Dr. Albeck on Monday, July 28, 2003. On Friday, July 25, 2003, Luck emailed Dr. Albeck to cancel the appointment because he was planning on traveling with his uncle, Greg Luck, to St. John. Dr. Albeck prescribed Alprazolam, to help with Luck’s fear of flying. On Sunday, July 27, 2003, Luck traveled to St. John. Prior to the trip, neither Dr. Albeck nor any member of the decedent’s family or his girlfriend believed the decedent was suicidal. Luck had indicated his continued depression in emails to Dr. Albeck, but never discussed a plan or intent to commit suicide nor expressed any suicidal ideation.
Luck was found dead in his uncle’s condominium in St. John on Wednesday, July 30, 2003. According to the Certificate of Death, certified by William Fogarty, M.D., the immediate cause of the decedent’s death was “aspiration of vomitus” due to “interaction (sic) with drug alcohol.” The Certificate indicated that the death was an accident.
Subsequent to Luck’s death, the decedent’s mother, DeCourcey, paid to have a toxicology screen performed on the decedent’s blood. According to the toxicology report, prepared by National Medical Services, the following was identified in the decedent’s blood: ethyl alcohol (76 mg/dL; 0.07% blood alcohol content); positive for benzodiazepines crossreactives; Al-prazolam (13 nanog/ml); Methadone (340 nanog/ml); and EDDP (Methadone Metabolite) (66 nanog/ml). Dr. Albeck never prescribed Methadone for the decedent. The decedent’s uncle was taking Methadone at the time he traveled to St. John with the decedent and had a usual practice of keeping his Methadone in an aspirin bottle or unmarked container.
DISCUSSION
I. Summaiy Judgment Standard
Summaiy judgment will be granted when no genuine dispute exists as to any material fact and the moving party is entitled to judgment as a matter of law. See Mass.R.Civ.P. 56; Cassesso v. Comm’r of Corr., 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). In deciding a motion for summaiy judgment, the court may consider pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. Mass.R.Civ.P. 56(c); Community Nat’l Bank, 369 Mass. at 553. The court views the facts in the light most favorable to the non-moving party. G.S. Enters., Inc. v. Falmouth Marine, Inc., 410 Mass. 262, 263 (1991). The moving party bears the burden of affirmatively demonstrating the absence of a triable factual issue and of showing that it is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). Once the moving party demonstrates the absence of a triable issue, the non-moving party must set forth specific facts establishing the existence of a genuine dispute as to a material fact. Correllas v. Viveiros, 410 Mass. 314, 317 (1991). “A complete failure of proof concerning an essential element of the non-moving party’s case renders all other facts immaterial” and requires summaiy judgment in favor of the moving party. Kourouvacilis v. General Motors Corp., 410 Mass. 706, *418 711 (1991). “in deciding a motion for summary judgment, a court does not resolve issues of material fact, assess credibility, or weigh evidence.” Kernan v. Morse, 69 Mass.App.Ct. 378, 382 (2007).
II. Negligence & Wrongful Death
To prevail on a claim of medical malpractice, a plaintiff must establish the applicable standard of care and demonstrate both that a defendant physician breached that standard, and that this breach caused the patient’s harm. Palandjian v. Foster, 446 Mass. 100, 104 (2006). “The existence or nonexistence of a duty is question of law, and is thus an appropriate subject of summary judgment.” Jupin v. Kask, 447 Mass. 141, 146 (2006); see Remy v. MacDonald, 440 Mass. 675, 677 (2004) (“If no such duty exists, a claim of negligence cannot be brought”). “Although causation is generally left to a jury to decide, it may [also] be determined as a question of law where there is no set of facts that could support a conclusion that the plaintiffs injuries were within the scope of liability.” Leavitt v. Brockton Hospital, Inc., 454 Mass. 37, 44-45 (2009); Stamas v. Fanning, 345 Mass. 73, 76 (1962) (“There are situations where it can be said, as a matter of law, that a cause is remote rather than proximate”); Poskus v. Lombardo’s of Randolph, Inc., 423 Mass. 637, 638 (1996) (causation resolved on motion for summary judgment); Foley v. Boston Hous. Auth., 407 Mass. 640, 646 (1990) (same).
Dr. Albeck argues that he is entitled to summary judgment because DeCourcey has failed to put forth sufficient evidence that anything Dr. Albeck did or allegedly failed to do was the cause of the decedent’s death. First, Dr. Albeck challenges whether any medications he prescribed to the decedent were the cause in fact of the decedent’s death. Second, Dr. Albeck disputes that he had a legal duty to conduct an emergency meeting with the decedent before the trip to St. John and argues that even assuming, arguendo, that he had such a duty, failure to meet was not the proximate cause of the decedent’s death. DeCourcey counters that a triable factual issue exists because her expert, Carlyle Voss, M.D., established that Dr. Albeck deviated from the standard of care and that through this deviation, Dr. Albeck placed the decedent in the foreseeable circumstance in which an accidental overdose was likely to occur, and did occur.
A. Duty of Care
“Whether a duty exists is a question of common law, to be determined by ‘reference to existing social values and customs and appropriate social policy.’ ” Remy, 440 Mass. at 677, quoting Cremins v. Clancy, 415 Mass. 289, 292 (1993). DeCourcey’s argument references at least three psychiatric duties cited by her expert, Dr. Voss: (1) to inform and/or warn the decedent of the serious risks associated with mixing alcohol and/or recreational drugs with prescribed medications; (2) to perform a safety or suicide risk assessment; and (3) to properly or adequately monitor the treatment approach in response to the patient’s adverse reactions to medications. Assuming these practices represent the applicable standard of care and skill of the average psychiatrist at the time of the decedent’s death, Brune v. Belinkoff, 354 Mass. 102, 109 (1968), this court considers whether any duly was breached.
With respect to the first duty, Dr. Albeck claims that pursuant to his usual custom and practice, he advised Luck routinely and repeatedly not to consume alcohol in conjunction with the medications he was prescribed. DeCourcey argues that there is no indication in Dr. Albeck’s treatment notes that he ever counseled Luck against the use of alcohol or drugs while taking the prescription medications. At this stage of the proceedings, the court will not assess credibility but will proceed as if Dr. Albeck breached this duty in order to assess whether the breach was material to the issue of causation.
As to the second duty, Dr. Albeck characterizes it as a duty to conduct an in-person emergency meeting with Luck prior to his trip to St. John, and challenges it as impractical, ineffective and not required by law. Proper analysis of the applicability of a duty to assess and manage the risk of suicide or harm to the decedent turns on the foreseeability of the suicide or safety risk. See McNamara v. Honeyman, 406 Mass. 43, 55 (1989) (psychiatrist’s duty of care to institutionalized patient included taking reasonable steps to prevent her suicide when it was a known or foreseeable risk). In McNamara, the court found it reasonable for a juiy to conclude that the psychiatrist’s failure to keep the patient on one-on-one observation was the proximate cause of the patient’s suicide where the patient had made several prior suicide attempts and her boyfriend had informed the hospital staff that she had made an attempt the day before her death. 406 Mass. at 49-52. It is undisputed that none of the people closest to Luck, including his mother, his sister and his girlfriend, believed that Luck was suicidal prior to his trip to St. John. Dr. Voss argues that Luck clearly expressed thoughts reflecting serious suicide risk in emails to Dr. Albeck on several occasions, but none of the e-mails indicated any plan or intent to commit suicide, key factors in assessing whether a patient is acutely suicidal. It was also unforeseeable that the decedent was at high risk for an accidental overdose as there was no indication that Luck had used drugs or alcohol in the six months prior to this trip. Thus, Dr. Albeck’s duty to assess Luck’s safety or suicide risk did not include holding an emergency meeting prior to Luck’s trip.
With regards to the third duty, Dr. Voss alleges that there is no documentation that Dr. Albeck took clinical steps to address concerns raised by Luck and Bonhomme regarding Luck’s adverse reactions to the medications. She also notes that there is no indication of any follow-up by Dr. Albeck to monitor changes in *419 medications especially where new medications were prescribed immediately after discounting a prior medication. Dr. Albeck denies these allegations. Thus, at this stage, the court will proceed as if Dr. Albeck breached this duty in order to assess whether the breach was material to the issue of causation.
B. Causation
“Liability for conduct obtains only where the conduct is both a cause in fact of the injury and where the resulting injury is within the scope of the foreseeable risk arising from the negligent conduct.” Leavitt, 454 Mass. at 45 (citations omitted). The causal link between a physician’s negligent conduct and the plaintiff s injury “must generally be shown by expert testimony that the injury was more probably than not a result of the physician’s lack of due care.” Cusher v. Turner, 22 Mass.App.Ct. 491, 497 (1986), citing Berardi v. Menicks, 340 Mass. 396, 402 (1960). “A plaintiff does not satisfy her burden if the proffered expert testimony is based upon conjecture or speculation.” Id., citing Murphy v. Conway, 360 Mass. 746, 749 (1972).
Dr. Albeck claims that the dispute over whether he satisfied the first duty, to counsel the decedent to abstain from alcohol and drugs, is immaterial because DeCourcey failed to put forth sufficient evidence to establish that the medications Dr. Albeck prescribed to the decedent were the cause of Luck’s death, either independently or in combination with alcohol and Methadone. According to Dr. Albert’s expert, Michele Burns Ewald, M.D., Luck’s death was primarily caused by an overdose of Methadone, and the findings of Ethyl Alcohol and Alprazolam in Luck’s blood were insignificant and not related to his death. Although the plaintiffs expert does not directly counter this finding, she refers to the opinion of the medical examiner that Mr. Luck’s death was caused by an accidental overdose of prescription medications and alcohol. According to the Certificate of Death, the immediate cause of the decedent’s death was “aspiration of vom-itus” due to “interaction (sic) with drug alcohol.” However, this reliance is misplaced as the death certificate fails to indicate which drug interacted with the alcohol. The only way to know with reasonable medical certainty which medication or medications were overdosed and interacted with drug alcohol, without testimony from a percipient witness or the presence of sufficient circumstantial evidence from which one could draw a reasonable inference, was to perform a laboratory examination of a sample of Luck’s blood in order to measure the volume of drugs in it that could sufficiently interact with the alcohol. The evidence in this case, based upon the test results and the medical opinion, formed in part upon the same test results stand unrebutted that Luck’s death was caused primarily by an overdose of Methadone. Thus there is no triable issue that Luke’s use of his prescription drugs along with his ingestion of alcohol played any part in his death. Summary judgment for the defendant as to this theory of negligence is ALLOWED.
Finally, turning to the third duty, Dr. Albert’s expert indicates that none of the medications Dr. Albert prescribed to Luck played a significant role in the decedent’s death. Moreover, Dr. Albert argues that the plaintiff has failed to put forth any evidence that the medications Dr. Albert prescribed were a biological or chemical cause of the death. According to the plaintiffs expert, “Mr. Luck’s mental state (depression with suicidal thoughts) and the medications prescribed by Dr. Albeck significantly contributed to the overdose that caused his death.” As this conclusoiy statement is based on mere conjecture and speculation, the plaintiff has not satisfied her burden of showing that the decedent’s injury was more probably than not a result of the psychiatrist’s negligence. See Cusher, 22 Mass.App.Ct. at 497. Thus, summary judgment for the defendant as to this theory of negligence is ALLOWED.
ORDER
For the foregoing reasons, Dr. Albeck’s motion for summary judgment as to all claims is ALLOWED.