SUPERIOR COURT 
 
 RICKY J. FRENI v. UBER TECHNOLOGIES, INC., RASIER, LLC, GUILHERME ROCHO, and JAMES RIVER CASUALTY COMPANY

 
 Docket:
 2184CV00326-C
 
 
 Dates:
 August 10, 2021
 
 
 Present:
 /s/Robert B. Gordon Justice of the Superior Court
 
 
 County:
 SUFFOLK, ss.
 

 
 Keywords:
 MEMORANDUM OF DECISION AND ORDER ON UBER DEFENDANTS’ MOTION TO DISMISS
 
 

             Plaintiff Ricky J. Freni (“Freni”) has brought a three-count Amended Complaint in which he asserts negligence claims arising out of an automobile collision in which he sustained serious personal injuries. At the time of the collision, Freni was seated in a parked truck that was impacted by an Uber vehicle. The Uber vehicle was then being driven by an intoxicated passenger named Matthew R. Tyre (“Tyre”), who had assaulted the automobile’s paid driver, Guilherme Rocho (“Rocho”), and thereby caused the driver to abandon the vehicle and flee on foot. When Rocho left car keys in the ignition to escape his assailant, Tyre commandeered the vehicle and proceeded to crash it into Freni’s truck. Freni’s suit seeks, inter alia, to hold Uber Technologies, Inc. and its business subsidiary, Rasier, LLC (together, the “Uber Defendants”) liable in negligence for failing to employ reasonable safety measures and precautions that would have prevented the Tyre carjacking and the resulting automobile collision.
 
                                                            -1-
 
            .Presented for decision is the Uber Defendants’ Motion to Dismiss for failure to state a claim upon which relief can be granted. By this Rule 12(b)(6) motion, the Uber Defendants seek the dismissal of Plaintiff’s negligence claims against them on the ground that they owed no duty to protect Freni from the criminal conduct of third parties such as Tyre. Having reviewed the submissions of the parties, and following a hearing, the Court agrees that the Plaintiff’s Amended Complaint states no viable cause of action against the Uber Defendants. The Uber Defendants’ motion, therefore, shall be ALLOWED, and Counts I and II of the Amended
Complaint shall be DISMISSED as to these Defendants.
BACKGROUND
            The Plaintiff’s Amended Complaint, which the Court construes in the light most favorable to his claims, Lipsitt v. Plaud, 466 Mass. 240, 241 (2013), sets forth the following material facts.
            In the late evening hours of February 27, 2019, Rocho was serving as a driver for the ride-sharing internet application known as Uber. The Uber Defendants operate a technology platform that brings together paying passengers who seek vehicular transportation with approved drivers available to provide it. Shortly before midnight, Rocho responded to a ride-share request from Tyre and picked him up for transport in East Boston. At all times relevant during their ensuing ride, Tyre was “intoxicated and violent” and “engaged in multiple threats to Rocho.”[1]
 
------------------------------------------
 
[1] Although the Amended Complaint is ambiguous as to whether Tyre’s assault on Rocho entailed both verbal threats and physical battery, the Plaintiff’s Opposition quotes documents making clear that physical violence was very much part of the attack. See Plaintiff’s Opposition, at 3 (noting that Tyre “deliver[ed] two closed-fist strikes to the arm of Rocho” and “threw a glass bottle of Johnnie Walker Whiskey at him” as “Tyre chased him out of the car”). Although this clarification is not drawn from the Amended Complaint itself, it appears undisputed as a factual matter, is reflected in the Plaintiff’s own submissions to the Court, and bears materially on the viability of Freni’s negligence claims against the Uber Defendants. The Court takes further notice of public records reflecting that Tyre pleaded guilty to Assault and Battery by Means of a Dangerous Weapon in connection with the events of February 27, 2019. See Commonwealth v. Matthew Ricco Tyre, Docket No. 1914CR000413 (Dist. Ct. Dept., Chelsea Div.). See also Jarosz v. Palmer, 436 Mass. 526, 536 (2002) (judicial notice may be taken of court records in related action); Mass. G. Evid. § 201(b)(2) and related note (2021 ed.). The Court thus considers these documented facts when passing on the Defendants’ Rule 12 motion. See Marram v. Kobrick Offshore Fund, Ltd., 442 Mass. 43, 45 n.4 (2004).
 
                                                            -2-
 
Tyre’s assault prompted Rocho to pull over to the side of the road and exit the running automobile. This, in turn, led Tyre to “commandeer and/or carjack” the Uber vehicle, and then to crash the car into Freni’s stationary truck. Freni suffered serious personal injuries as a result of this collision.
            The Amended Complaint charges that Rocho recklessly “allowed for and enabled the intoxicated and violent passenger known as Tyre to commandeer and/or carjack the running Uber vehicle.” (Am. Compl. at para. 18.)  More specifically, the Amended Complaint alleges that Rocho “did fail to act to safeguard and protect Plaintiff Freni by failing to turn off and/or disable the Uber vehicle and remove the keys and/or employ a kill switch, knowing said failure would present an imminent risk [of] harm and bodily injury to the Plaintiff.” (Am. Compl. at para. 19.) The Plaintiff seeks to hold the Uber Defendants vicariously liable for Rocho’s negligence. (Am. Compl. at paras. 13, 15, 18-21, 29-36.) The Plaintiff additionally seeks to hold the Uber Defendants directly liable for their own negligence in “fail[ing] to control, manage, hire and otherwise instruct and employ proper procedures and regulations upon [their] drivers” (Am. Compl. para. 23), and in “fail[ing] to implement adequate safety standards and policies to maintain a safe transportation.” (Am. Compl. para. 25.)
DISCUSSION
            “A viable negligence claim requires a showing that a defendant owes a duty of reasonable care to the plaintiff, the defendant committed a breach of that duty, the plaintiff suffered damage, and a causal relationship existed between the breach of duty and the damage.” Heath-Latson v. Styller, 487 Mass. 581, 584 (2021). Accord Helfman v. Northeastern Univ., 485 Mass. 308, 315 (2020) (same). The existence of a legal duty vel non is a question of law for the Court, and is
 
                                                            -3-
 
properly decided on a motion to dismiss. See Leavitt v. Brockton Hospital, Inc., 454 Mass. 37, 40 (2009).
            “Under our case law, [one does] not owe others a duty to take action to rescue or protect them from conditions [one has] not created.” Nguyen v. Massachusetts Inst. of Tech., 479 Mass. 436, 448 (2018) (citation and quotation omitted). Accord Helfman, 485 Mass. at 315 (quoting Restatement (Third) of Torts: Phys. & Emot. Harm § 37 (2012)).  The law generally provides that this no-duty rule extends to the criminal acts of third parties. See Heath-Latson, 487 Mass. at 584 (the duty of care “generally does not extend to taking ‘affirmative steps to protect against dangerous or unlawful acts of third persons’”) (quoting Luoni v. Berube, 431 Mass. 729, 731 (2000)); Helfman, 485 Mass. at 315 (same); Jupin v. Kask, 447 Mass. 141, 148 (2006) (same).
            There is, however, a recognized exception to this rule. A duty to protect against harm caused by the conduct of a third person will arise when there exists a “special relationship” between a defendant and a plaintiff such that the defendant “reasonably could foresee that he would be expected to take affirmative action to protect the plaintiff and could anticipate harm to the plaintiff from the failure to do so.” Adams v. Congress. Auto Ins. Agency, Inc.., 90 Mass. App. Ct. 761, 765 (2016) (quoting Irwin v. Ware, 392 Mass. 745, 756 (1984)). In the commercial setting, such a special relationship has been found to exist between colleges and matriculating students, see Helfman, 485 Mass. at 316-18, and between hoteliers and their guests, see Fund v. Hotel Lenox of Boston, Inc., 418 Mass. 191, 192-93 (1994).
            In the case at bar, the Amended Complaint makes clear that Freni’s injuries were caused directly by the criminal behaviors of Tyre. Tyre carjacked an Uber vehicle by threatening and physically assaulting its driver, and then recklessly drove the vehicle while intoxicated until he collided into Freni’s truck. Rocho, an agent of the Uber Defendants, was himself a victim of
 
                                                            -4-
 
Tyre’s criminal conduct, and played no part in causing the collision that resulted in Freni’s injuries. The Uber Defendants, in turn, merely provided the technological platform on which paying ride-seekers are linked with authorized drivers. These Defendants thus had no relationship – special or otherwise – with Freni (a non-customer) such as would attach a duty of care to protect him from the wrongdoing of Tyre (an unrelated passenger).
            The presumption under Massachusetts law, therefore, is that the Uber Defendants cannot be held liable for injuries to the Plaintiff caused by Tyre’s criminal conduct. The Court has held, in its Memorandum of Decision and Order on Rocho’s Motion for Judgment on the Pleadings of today’s date, that Rocho owed no duty to Freni under law such as would allow for negligence liability to run to him in this case. The Court will not rehearse the full legal analysis or recite all of the applicable case law supporting this conclusion, except to state that the absence of a viable negligence claim against Rocho perforce forecloses the imposition of vicarious liability on the Uber Defendants. See Lev v. Beverly Enterprises-Massachusetts, 457 Mass. 234, 238-39 (2010).
            As for the direct negligence claims asserted against the Uber Defendants, the Court again concludes that such claims founder on Plaintiff’s failure to plead facts sufficient to establish a legal duty to protect Freni from the criminality of Tyre. It may well be, as the Plaintiff argues, that the Uber Defendants could have better trained drivers like Rocho in how to deal with crises, or implemented more effective policies for managing unruly passengers, or insisted that rideshare vehicles be equipped with kill switches or partitions that might have diminished the ability of inebriated passengers to wrest control of an automobile from authorized drivers. Such claimed failures, however, will not give rise to negligence liability if they do not amount to a breach of a cognizable duty owed. See O’Sullivan v. Shaw, 431 Mass. 201, 203 (2000) (quoting Davis v. Westwood Group, 420 Mass. 739, 742-43 (1995)) (“Before liability for negligence can
 
                                                            -5-
 
be imposed, there must first be a legal duty owed by the defendant to the plaintiff, and a breach of that duty proximately resulting in the injury.”). There was no such duty to Freni – viz., to protect him from an automobile collision at the hands of an inebriated thief – owed by the Uber Defendants.
            Numerous cases stand for the proposition that one who owns or is otherwise responsible for a vehicle owes no duty to others to protect them from harms caused by unrelated third parties who steal and then misuse the vehicle. The criminal misconduct of the third party is considered an independent and intervening act, which the vehicle owner is under no obligation to foresee and mitigate. In Poskus v. Lombardo’s of Randolph, Inc., 423 Mass. 637 (1996), for example, the SJC rejected the argument that a nightclub that negligently allowed a customer’s vehicle to be stolen could be liable to a police officer who was injured during an ensuing attempt to apprehend the fleeing thief. The Court did so because “the reasonably foreseeable risk of harm to others created by [the nightclub’s] negligence did not include harm caused when the thief resisted arrest.” Id. at 640. See also Jesionek v. Massachusetts Port Auth., 376 Mass. 101, 104-05 (1978) (“this court has held that negligence in leaving keys in the ignition of a parked car is not the proximate cause of injuries resulting from the operation of the car by a thief”; further observing that “[t]he cases which have absolved an owner of a vehicle of liability when that vehicle has been stolen … represent an independent legal judgment that individuals are not bound to anticipate or guard against the actions of thieves”). Accord Galbraith v. Levin, 323 Mass. 255, 261 (1948) (no liability where defendants left vehicle unattended with keys on top of visor, and vehicle was subsequently stolen and involved in accident: “the conduct of the thief was an intervening cause which the defendants were not bound to anticipate and guard against”); Ouellette v. Bethlehem-Hingham Shipyard, Inc., 321 Mass. 390, 393 (1947) (fire department not
 
                                                            -6-
 
liable for injuries caused by accident involving fire truck stolen by thief, even though department employees had left vehicle unlocked and running in front of station: “The defendant was not liable merely because a person without authority took the truck after it had been left unlocked and with the motor running in front of the fire station”); Sullivan v. Griffin, 318 Mass. 359, 361 (1945) (denying recovery to plaintiff whose decedent was killed by a car stolen from defendant, even though theft occurred because defendant had left ignition key in unattended vehicle in violation of statute: “the injuries here were not a proximate result of the defendant’s negligence”); Slater v. T.C. Baker Co., 261 Mass. 424, 425 (1927) (upholding directed verdict against negligence claim where third party had stolen defendant’s automobile and thereafter caused death of plaintiff’s decedent: “the larceny of the automobile and its use by the thief were intervening independent acts” defeating proximate cause); Wilson v. Lawrence, 2004 Mass.
Super. LEXIS 664, at *6-8 (Mass. Super. Ct. 2004) (McEvoy, J.) (holding car dealership not liable for plaintiff’s injuries because dealership’s alleged negligence in failing to prevent theft of vehicle was not proximate cause of injuries where third party broke into locked vehicle, drove to another city, and hours later recklessly crashed into plaintiff’s vehicle). These decisions control the case at bar, where Plaintiff similarly seeks to hold the Uber Defendants responsible for a car collision which resulted because their supposed negligence allowed Tyre to gain illicit control of the automobile that crashed into Freni’s truck. Because the necessary duty of care and proximate cause are lacking as a matter of law,[2] no such negligence claim will avail on these facts.
 
-------------------------------------
 
[2] Leavitt v. Brockton Hospital, Inc., 454 Mass. 37 (2009), is to similar effect. In Leavitt, the plaintiff police officer was injured while responding to a pedestrian accident involving a colonoscopy patient whom the defendant hospital had discharged while the patient was still under the influence of narcotics. 454 Mass. at 39. The plaintiff alleged that the hospital had been negligent in discharging this patient without an escort, but the court allowed the hospital’s motion to dismiss on lack of duty grounds. Id. at 40-41 (“Absent a special relationship with a person posing a risk, there is no duty to control another person’s conduct to prevent that person from causing harm to a third party”). Even though the hospital was acknowledged to owe certain duties of care to its patient, those duties did not extend to protecting unrelated third parties from his actions. Id. at 41-44. It is well to note in this regard that the Uber Defendants have far less of a relationship – to both Tyre and his victim – than what the SJC found insufficient to give rise to a duty of care in Leavitt.
 
                                                            -7-
 
            In his Opposition to the Uber Defendants’ motion, Freni argues that Commerce Insurance Co. v. Ultimate Livery Service, Inc., 452 Mass. 639 (2008), represents authority for negligence liability in this case because it “addressed similar facts, and involved a claim against a private livery service for failing to prevent an intoxicated passenger from driving himself home and becoming involved in a fatal accident after a long night of drinking.” (Plaintiff’s Opposition, at 5.) Although the liability ruling in Commerce Insurance may be superficially analogized to Freni’s claim, Plaintiff’s characterization of the case omits critically important factual elements and elides the most essential piece of the Court’s reasoning. The negligence of the van driver in Commerce Insurance consisted of transporting five bachelor-partying men round-trip from a Boston bar to a Rhode Island strip club, additionally stopping for mid-trip liquor purchases at a package store, and then permitting this group of clearly intoxicated passengers to continue consuming large amounts of alcohol while en route. 452 Mass. at 643-44. The private carrier’s driver then deposited these passengers back at the sports bar where the evening’s drinking had begun, leaving them to determine without assistance whether they were capable of getting home safely. Id. at 644. One of the inebriated excursioners then proceeded to drive home on his own, and got into an automobile collision that killed an off-duty police officer. Id. The SJC upheld negligence liability against the transportation company on these facts, resting its decision on the premise that the driver’s direct role in permitting (indeed, facilitating) the customer’s drunk driving rendered the carrier fairly responsible for the car accident that foreseeably followed. Id. at 649-50.
            The case thus properly understood, the Court does not agree with Plaintiff’s contention that Commerce Insurance presents “similar facts” to those set forth in the Amended Complaint.
 
                                                            -8-
 
In Commerce Insurance, the defendant participated directly, purposefully, and consequentially in the behaviors that caused the customer’s intoxication -- driving him to and from multiple drinking establishments and a liquor store, and then permitting the further consumption of alcohol in his vehicle. The driver then dropped off this clearly intoxicated passenger at the sports bar from which the bachelor party excursion had originated, doing nothing by way of precautions to ensure that he would be able to get home safely in his condition. In the case at bar, by contrast, Tyre was already intoxicated when he got into Rocho’s Uber vehicle. Rocho did nothing to permit or promote Tyre’s excessive drinking, but was instead a victim of this third party’s threatening and assaultive behavior. Far from acting in concert with Tyre to encourage his intoxication and then leaving him to drive home dangerously under the influence, as the defendant’s driver did in Commerce Insurance, Rocho fled Tyre’s criminality when Tyre began to attack him violently in a way that compromised the safety of his driving. Rocho thus made none of the kinds of voluntary decisions directly contributing to a passenger’s drunk driving that the van driver in Commerce Insurance did, rendering the SJC ruling now relied upon by the Plaintiff inapposite. As the Commerce Insurance Court itself cautioned, “our finding of possible liability in this case is limited to the facts described above[,] and our holding that a duty exists on these facts does not signal that liability may be found in cases involving other private carriers for hire with dissimilar facts.” Commerce Insurance, 452 Mass. at 650. Plaintiff’s negligence claim against the Uber Defendants is, as the SJC forecast, distinguishable on its facts, thus rendering the holding of Commerce Insurance without force.
            Conceding that he is aware of no case authority, in Massachusetts or elsewhere, upholding the negligence liability of a transportation platform, carrier or vehicle owner on comparable facts, Plaintiff argued at hearing that considerations of “good social policy” militate
 
                                                            -9-
 
to this result. Plaintiff’s argument reduces to the proposition that organizations like Uber are in the best position to prevent catastrophic outcomes like the one that befell Freni, and that they and their insurers are likewise best situated to absorb and then socialize the losses of same. The Court acknowledges that there is some economic appeal to this position, and that public policy may well justify holding parties like Uber accountable in these circumstances. But it is for society’s elected lawmakers to define that public policy, after balancing the competing costs and benefits thereof. It is simply not for the Court to enact such policy by fiat, imposing it on litigants under the auspices of tort law.
CONCLUSION AND ORDER
            For the foregoing reasons, the Plaintiff has failed to state a viable negligence claim against the Uber Defendants. These Defendants owed no cognizable duty to protect Freni against the harms caused by Tyre’s criminal misconduct. An essential element of a negligence cause of action against the Uber Defendants thus lacking, the claims asserted against them in Counts I and II of the Amended Complaint shall be dismissed.
            SO ORDERED.
 
/s/Robert B. Gordon Justice of the Superior Court
 
August 10, 2021
 
                                                            -10-
 
xxz