[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Pursuant to General Statutes § 52-325a (c), the defendants, Paul A. Dean and Shirley K. Dean, have moved to discharge the lis pendens recorded against their property at 130 Field Point Circle, Greenwich, by the plaintiffs, Peter D. Kiernan and Eaddo H. Kiernan, on June 20, 1997.[1]
The Deans, as owners, prepared a contract of sale of their home to the Kiernans, as purchasers, and the contract was sent to the attorney for the Kiernans. On June 16, 1997, several hours before the plaintiffs actually signed the contract, the defendants' attorney notified the purchasers' attorney by a facsimile transmission that "effective immediately" the contracts were "withdrawn." Nonetheless, the plaintiffs signed the contract later during the day of June 16, 1997, without make any changes or without adding any conditions, and then transmitted the signed contract, along with a check for $658,100, representing the 10% deposit, to the attorney for the defendants, several hours after the notification of "withdrawal."
The defendants base their claim for a discharge of the lis pendens on General Statutes § 52-550 (a), the statute of frauds, which provides in pertinent part that "[n]o civil action may be maintained in the following cases unless the agreement, or a memorandum of the agreement, is made in writing and signed by the party, or the agent of the party, to be charged . . . (4) upon any agreement for the sale of real property or any interest in or concerning real property." According to McNeil v. Riccio,45 Conn. App. 466, 470 (1997), "[T]he statute of frauds requires contracts for the conveyance of realty to be in writing." There is an exception referred to in that case, ie., "conduct that amounts to part performance." Id.
The defendants also contend that on June 16, 1997, before the contracts were signed by the plaintiffs, and also before the plaintiffs' attorney delivered the signed contract and the check for $658,100 to the sellers' attorney, the defendants withdrew and revoked any offer to sell their home.
The plaintiffs have the burden of proving that they are CT Page 9683 entitled to record a lis pendens against the property of the defendants. "[T]he plaintiff shall first be required to establish that there is probable cause to sustain the validity of his claim." General Statutes § 52-325b (a). A hearing was held by this court on August 18, 1997. "[T]he sole purpose of the hearing in the trial court was to determine if probable cause existed to sustain the notice of lis pendens." Corsino v. Telesca,32 Conn. App. 627, 635, 630 A.2d 154, cert. denied, 227 Conn. 931,632 A.2d 703 (1993). "[T]he legal idea of probable cause is a bona fide belief in the existence of the facts essential under the law for the action and such as would warrant a man of ordinary caution, prudence and judgment, under the circumstances, in entertaining it." Id., 631-32.
The plaintiffs claim that although they do not possess a contract signed by the defendants, the party to be charged, there are other writings or memoranda of the agreement which satisfy the statute of frauds. The first is the bidding process in which the defendants, as sellers of the subject premises, agreed to sell their home to the highest bidder. When the signed and sealed bids were opened on June 11, 1997, the plaintiffs in this case were the highest bidders, with an offer of $6,581,000. The plaintiffs contend that this written bidding process constitutes a "contract" between the parties because their successful bid represented an offer to purchase which was accepted by the defendants.
The second writing allegedly satisfying the statute of frauds is the letter dated June 13, 1997, enclosing the proposed contract, which was sent by the defendants' attorney, Charles K Campbell, Jr., to the attorney for the plaintiffs, Henry W. Pascarella. This letter stated in pertinent part that "[I]f the Agreement is satisfactory, please return two copies signed by your clients, along with a check in the amount of $658,000.00 Upon receipt of the signed copies I will have them executed by Mr. and Mrs. Dean and will return one fully executed copy to you . . . . As I believe your clients are aware, back-up offers exist, and my clients are therefore anxious to get the contracts signed as soon as possible. I have been instructed to inform you that unless the contracts are signed and returned to me along with the down-payment check by 5:00 p.m. on June 20, 1997, the Deans will feel free to open negotiations with the back-up bidders." The plaintiffs claim that this letter, sent by Attorney Campbell, as the purported "agent" of the defendants, and the contract enclosed therein, together constitute a written "integrated" CT Page 9684 contract within the meaning of the statute of frauds.
The plaintiffs also argue that there was part performance on their part which performance represents an exception to the statute of frauds. The alleged part performance consists of their payment for a septic study and a building inspection of the subject premises, the hiring of a title company to perform a title search, a conference with their attorney regarding the proposed purchase and the incurring of legal fees.
Also, the plaintiffs contend that because of the wording of Attorney Campbell's letter of June 13, 1997, they were given an "option" until June 20, 1997, in which to purchase the subject premises. The plaintiffs argue that the defendants' offer to sell was irrevocable until the date specified had expired, and therefore that the defendants could not withdraw their offer on June 16, 1997, as they purported to do.
The court finds that the plaintiffs have not satisfied their burden of proving probable cause to sustain the validity of their claims. This is because they are faced with the statute of frauds and the inescapable fact that they do not possess a contract signed by the defendants, the parties to be charged. The plaintiffs first contend, as noted previously, that the bidding process, in which they were the highest bidders, constituted an offer by the defendants to sell and the plaintiffs by making the highest bid, accepted such offer and a binding contract has arisen. However, the plaintiffs have not cited any convincing authority that the acceptance of a bid to purchase real estate somehow results in a written contract satisfying the statute of frauds. After the bidding process was over, the defendants prepared an actual contract of sale which was the document that needed to be signed by the party to be charged in order to be enforceable.
The plaintiffs also claim that Attorney Campbell's letter of June 13, 1997, enclosing the proposed contract, constitutes a writing sufficient to satisfy the statute of frauds. However, Mr. Campbell was never shown to be the "agent" of the sellers, the Deans, within the scope of the statute of frauds. Moreover, the letter expressly states that the Deans would be executing the contract. Agency requires: "(1) a manifestation by the principal that the agent will act for him; (2) acceptance by the agent of the undertaking; and (3) an understanding between the parties that the principal will be in control of the undertaking." Gateway Co. v. DiNoia,
CT Page 9685232 Conn. 223, 240. 654 A.2d 342 (1995). None of these requirements was established by the plaintiffs.
In addition, there is no evidence that Attorney Campbell was acting with apparent authority for his clients. "Apparent authority is that semblance of authority which a principal, through his own acts or inadvertences, causes or allows third persons to believe his agent possesses . . . . Apparent authority thus must be determined by the acts of the principal rather than by the acts of the agent." Beckenstein v. Potter Carrier, Inc.,191 Conn. 120, 140, 464 A.2d 6 (1983). No liability can be imposed on the defendants based upon the doctrine of apparent authority because of a lack of evidence that the plaintiffs were relying on any action or statement of the principals, the Deans. The attorney simply forwarded the contract to the plaintiffs and advised that his clients, the sellers, would also sign the contract.
Regarding the claim of part performance, all the plaintiffs did was take a few preliminary steps in the process of purchasing a home, at least some of which more cautious people might have delayed until they had a signed contract. According to Dunham vDunham, 204 Conn. 303, 528 A.2d 1123 (1987), for the doctrine of part performance to apply, it must first be found that there was an "agreement" between the parties. In this case, there was an offer which was withdrawn before it was accepted. Secondly, "the acts undertaken by the plaintiff prior to the initiation of this action . . . [must be] sufficiently substantial" to satisfy the statute of frauds. Id., 314-15. In this case, there was no proof by the plaintiffs of the amounts they allegedly expended, but any such amounts must be relatively insignificant as compared with the sales price.
In Dunham v. Dunham, supra, 204 Conn. 314, the plaintiff asserted that he invested "substantial" funds and "many hours of his labor making capital improvements" on the subject premises In this present case, the plaintiffs did not, for example, take possession of the property and start making improvements. A few preliminary steps, including retaining a lawyer, were taken but nothing substantial in the context of part performance.
The plaintiffs also claim "detrimental reliance" as an element of part performance but did not submit any evidence of a change of position in reliance on the actions of the defendants. The contracts were not received by the plaintiffs until June 13, 1997, and the contracts were "withdrawn" on June 16, 1997, with a CT Page 9686 weekend intervening, hardly sufficient time to effect a change of position "thereby incurring some injury." Lunn v. TokenekeAssociation, Inc., 227 Conn. 601, 607, 630 A.2d 1335 (1993). If the plaintiffs are able to make out a case for reimbursement for their expenditures, this does not affect real estate and justify the recording of a lis pendens. General Statutes § 52-325d
(1).
Finally, the plaintiff were not given an option but were simply advised that by June 20, 1997, the defendants would "feel free to open negotiations with the back-up bidders." In any event, the offer was withdrawn before it was accepted by the plaintiffs. Moreover, an option agreement regarding the sale of realty must itself be in writing in order to satisfy the statute of frauds. Robert Lawrence Associates, Inc. v. Del Vecchio,178 Conn. 1, 11, 420 A.2d 1142 (1979).
Hence, there is no writing that satisfies the statute of frauds nor part performance, and any offer that was theoretically outstanding was revoked before it was accepted. Because the plaintiffs did not establish probable cause to sustain the validity of their claims, the lis pendens recorded on June 20, 1997, against property of the defendants at 130 Field Point Circle, Greenwich, is ordered discharged. General Statutes §52-325b (b)(2)(A).[2]
Dated at Stamford, Connecticut, this 29th day of August, 1997.
LEWIS, J.