Hogan, Maureen B., J.
After sustaining injuries as a result of being struck by a vehicle that Robert D. Riskind, M.D. (“Riskind”) was driving in December 2001, the plaintiff, Richard Medina (“Medina”) commenced this negligence action against Riskind’s estate. In December 2005, after obtaining leave from the court, Medina filed an Amended Complaint, adding a claim of negligence against Riskind’s neurologist, Fred H. Hochberg, M.D. (“Dr. Hochberg”). This case is before the court on defendant Dr. Hochberg’s motion for summary judgment. For the following reasons, Dr. Hochberg’s motion is ALLOWED.
BACKGROUND
The undisputed facts, as set forth in the summary judgment record and as viewed in the light most favorable to the non-moving parly are as follows. Humphrey v. Byron, 447 Mass. 322, 325 (2006).
On December 10, 2001, while driving on his way home from work, Riskind struck Medina who had just gotten out of his own car (“accident”). As a result of the accident, Medina sustained serious injuries, including a broken right arm that required multiple *327 surgeries. He remained out of work until October 2002. The accident occurred because Riskind suffered a seizure, which was brought on by an inoperable brain tumor. Riskind was diagnosed with an inoperable brain tumor in September 2000, after he suffered a grand mal seizure while rowing on the Charles River on September 10, 2000. Beginning in November 2000 and continuing through the date of the accident and thereafter, Dr. Hochberg, a physician practicing at Massachusetts General Hospital, was Riskind’s treating neurologist.
Riskind was a practicing psychiatrist, who was board certified by the American Board of Psychiatry and Neurology. He was a 1968 graduate of Amherst College, cum laude, and a 1975 graduate of Northwestern Medical School. Since 1980, Riskind had maintained his own private practice in child, adolescent, and adult psychiatry. In 2000 and 2001, he also worked as the Assistant Medical Director for Inpatient Mental Health Services for the Tufts Associated Health Plan in Waltham, a job in which he reviewed medical cases to assess inpatient/outpatient treatment issues.
While under the care of Dr. Hochberg, Riskind saw Dr. Hochberg at least once a month between November 2000 and April 2002.[3] More often than not, Riskind’s wife, Francine Pillemer, was present during these visits. Riskind reported to Dr. Hochberg his day-to-day condition, his sensory seizure activiiy and control, his functionality, his reaction to various treatment options, and his preferences for and against various options. Riskind was aware of what a seizure was and discussed seizures with Dr. Hochberg on most every visit. During these visits (sometimes lasting up to 45 minutes to an hour), Riskind and his wife had extensive discussions with Dr. Hochberg regarding Riskind’s condition, his sensory seizure activity and control, his treatment options, and his progress. Not only did Dr. Hochberg meet with Riskind and discuss his medical condition at length with him, he also sent directly to Riskind detailed summaries of many of these office visits.
Dr. Hochberg’s treatment plan for Riskind included a change in the seizure medication he had been initially prescribed. Dr. Hochberg prescribed Depakote to control Riskind’s seizures. Riskind was also prescribed Ativan with instructions to take it if he felt a seizure coming on in order to halt the seizure. Pursuant to Dr. Hochberg’s instruction, Riskind did not drive for six months after the September 2000 seizure.[4] In his January 17, 2001, letter to Riskind and his wife in which he summarized that day’s appointment, Dr. Hochberg wrote, “You are able to drive and perform your usual activity including rowing.” Dr. Hochberg began driving again in March 2001 after the 6-month period required by law ended. At his deposition, Dr. Hochberg could not recall having further discussions with Riskind about his driving, and he testified that, up until December 10, 2001, he felt it was appropriate for Riskind to operate a motor vehicle. After Riskind began driving again in March 2001, Dr. Hochberg did not warn him not to drive or warn him of any dangerous risk of driving due to his health condition. According to Francine Pillemer, if Dr. Hochberg had instructed Riskind not to drive, he would not have driven.
Riskind had multiple “sensory seizures” after his diagnosis, during which he would feel a localized numbness or tingling, but they were not incapacitating and were not visible to an observer.[5] The areas where he experienced these sensory seizures included his right leg and right hand. Other than the seizure on September 10, 2000, Riskind did not have any grand mal seizures between September 2000 and December 2001.
Riskind developed a second tumor in summer 2001, which increased his sensory seizures to “2-3 times a day, and [caused] infacility as well as speech difficulty.” By his October 17, 2001, visit with Dr. Hochberg, Riskind’s “seizures [were] under much better control and . . . [he] [was] having less than 1 episode a day and then only involving [his] right hand . . . [and] [his] speech [was] also better. [He] [was] now able to converse with individuals, drive a car, speak to patients over the telephone but [had] not returned to active work.” As of his November 14, 2001, appointment with Dr. Hochberg, according to Dr. Hochberg’s letter to Riskind summarizing the visit, Riskind’s
seizure activity [was] under good control without any evidence of generalization. Right hand episodes [did] not generalize and last[ed] less than a minute usually and [did] not seem to affect the quality of [his] function . . . The hand cramping and speech difficulty . . . improved so much that although [he] [had] single word errors from time to time [he] actually [was] able to provide a coherent history, recall [his] medications and attend meetings . . . [He] still remain[ed] disabled for usual and customary activities[6] however.
(Footnote added.)
By the time of his November 26, 2001, visit with Dr. Hochberg, Riskind was experiencing “slight shoulder stiffness, arm stiffness and shortness of breath but no other intercurrent problems; no seizures, no headaches, no nausea, no vomiting, and no fevers. He . . . still continued to work part time at Tufts mainly doing case analyses but his speech has become encumbered.” On December 3, 2001, at his last visit with Riskind before the accident, Dr. Hochberg spent 45 minutes with Riskind discussing his treatment options. In Dr. Hochberg’s December 3, 2001, notes in which he mentioned Riskind’s hospitalization for shortness of breath, he wrote that “[f]rom a neurological standpoint, [Riskind] [had] been seizure free” while on his current regime of medications. In his deposition, Dr. Hochberg clarified that by “seizure *328 free” he was referring to sensory seizures as well as grand mal seizures.
According to Dr. Hochberg’s notes, dated December 17, 2001, Riskind informed him that he could not recall the Accident.
He “lost control and could not get the limbs to do what was needed .. . and didn’t know someone was hit. Heard a noise but did not realize there was an accident. Thereafter there was no speech for minutes.” . . . After the accident he was frightened and recalls people yelling and thought he was confused. No one saw an immediate seizure but he had trouble leaving his own car, was not responding to the police and was dazed. After leaving the car he had a seizure . . . He has not driven since the accident but had driven days before without limitation.
(First ellipses in original.)
On January 23, 2004, the plaintiff Medina instituted this action against Riskind’s estate, alleging a negligence claim. On April 14, 2005, Medina filed a motion to amend the complaint to add Dr. Hochberg as a defendant and assert a claim of negligence against him. On December 23, 2005, this court (Gants, J.) allowed the motion to amend, issuing a Memorandum of Decision and Order (2005 decision) [20 Conn. L. Rptr. 352].[7] In this 2005 decision, this court ruled that the amended complaint stated a viable claim, determining that Dr. Hochberg owed a duty to the public, arising from his physician-patient relationship with Riskind, to warn Riskind not to drive.
In the amended complaint, Medina alleges in paragraph 9 that “Fred H. Hochberg, M.D. negligently and carelessly treated his patient Robert Riskind, and negligently and carelessly failed to control his patient, by failing to order, advise, caution, warn, and instruct his patient, Robert Riskind, not to operate a motor vehicle due to the foreseeable risk to innocent bystanders . . .” Medina further alleges in paragraph 10 of the amended complaint: “Under Massachusetts common law and by virtue of Section 315 of the Restatement (Second) of Torts, a special relationship between physician (defendant) Fred H. Hochberg, M.D., and patient (Robert Riskind) existed which created a special duly owed to third persons (such as the plaintiff herein) who foreseeably may be harmed by the physician’s negligence in the treatment and control of his patient.” The plaintiff further alleges in paragraph 11 of the amended complaint that “as a result of the negligence of the defendant, Fred C. [sic] Hochberg, M.D., in the care and treatment and control of his patient Robert Riskind, and as a result of said defendant’s breach of the duly of care owed to the plaintiff, Richard Medina ... Medina was severely and permanently injured, when he was struck [by] the motor vehicle operated by the patient, Robert Riskind, as a result of Robert Riskind’s having a neurological seizure ...”
As revealed in the plaintiffs expert disclosures, the plaintiffs medical expert, Dr. Mark Friedberg, opines that “Dr. Riskind had several impairments which separately and together rendered him physically and mentally incapacitated for operating a motor vehicle and at imminent risk of losing consciousness while driving a car. These impairments included first and foremost, frequent daily seizures; in addition, he had a left hemisphere tumor and radiation damage affecting his memory, his speech, and his attention to the right; he was withdrawing from steroids putting him at risk for recurrent brain swelling; and he had just gotten over double pneumonia with impaired oxygen saturation.” Further, as to the issue of the defendant’s negligence, Dr. Friedberg opines that “Dr. Fred Hochberg, a professor of neurology who knows his subject and knew his patient, Dr. Riskind, should have expressly and repeatedly ordered, advised, instructed and warned his patient in no uncertain terms, never to operate a motor vehicle. Dr. Hochberg’s failure to do so, indeed his implicit encouragement to his patient to continue driving, is incomprehensible and a significant departure from the standard of medical care on the part of a neurologist.”
Defendant Dr. Hochberg now moves for summary judgment on Medina’s negligence claim against him.
DISCUSSION
Summary judgment is granted where there are no genuine issues of material fact and where the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Corr., 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). As the moving party has this burden, the court considers the evidence presented in the light most favorable to the non-moving party. Mass.R.Civ.P. 56(c); Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117, 120 (1991); Parent v. Stone & Webster Eng’g Corp., 408 Mass. 108, 113 (1990); Flynn v. Boston, 59 Mass.App.Ct. 490, 491 (2003). The moving party may satisfy its burden either by submitting affirmative evidence negating an essential element of the opposing party’s case, Flesner v. Technical Commc’ns Corp., 410 Mass. 805, 809 (1991), or by demonstrating “that the party opposing the motion has no reasonable expectation of proving an essential element of that party’s case.” Carey v. New England Organ Bank, 446 Mass. 270, 278 (2006), quoting Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). “[B]are assertions and conclusions .. . are not enough to withstand a well-pleaded motion for summary judgment.” Polaroid Corp. v. Rollins Envtl. Servs., Inc., 416 Mass. 684, 696 (1993).
*329 “A plaintiff seeking to hold a defendant liable in negligence must establish that the defendant owed the plaintiff a legal duty, and that a breach of that duty proximately caused injuiy to the plaintiff.” Petrell v. Shaw, 453 Mass. 377, 385 (2009), citing Davis v. Westwood Group, 420 Mass. 739, 742-43 (1995). Whether a defendant owes a plaintiff a legal duty is a question of law, which is appropriate for resolution by summaiy judgment. Id; Afarian v. Massachusetts Elec. Co., 449 Mass 257, 261 (2007). “In deciding whether a particular defendant has a duty in the circumstances, ‘[the court must] look to existing social values and customs, as well as to appropriate social policy.’ ” Cottam v. CVS Pharm., 436 Mass. 316, 320 (2002), quoting Davis, 420 Mass. at 743.
Dr. Hochberg moves for summaiy judgment on Medina’s negligence claim against him, asserting that under Massachusetts law, he owed no legal duty to Medina arising from his relationship with his patient, Riskind. See Leavitt v. Brockton Hosp., Inc., 454 Mass. 37 (2009); Coombes v. Florio, 450 Mass. 182 (2007). The plaintiff Medina argues that this court should be bound by the court’s 2005 decision allowing the plaintiffs motion to amend, in which the court concluded that Dr. Hochberg did owe a duty to the plaintiff, arising from the physician-patient relationship Dr. Hochberg had with Riskind, to warn Riskind of the dangers of driving caused by his medical condition. The plaintiff argues that Dr. Hochberg should have challenged the 2005 decision through an interlocutory appeal and that his request that this court again consider the question of his legal duty is inappropriate and untimely. This court does. not find that Dr. Hochberg’s motion for summary judgment is untimely. Pursuant to Mass.R.Civ.P. 56(b), “[a] party against whom a claim ... is asserted . . . may, at any time, move with or without supporting affidavits for a summaiy judgment in his favor as to all or any part thereof.” See Johnson v. Cooke, 17 Mass. L. Rptr. 517, 2004 WL 856606 at *4 (Mass.Super. 2004); C&I Steel, LLC v. Peabody Constr. Co., Inc., 22 Mass. L. Rptr. 402, 2007 WL 1540228 at *8 (Mass.Super. 2007); DiGaetano v. Lawrence Firefighters Federal Credit Union, 15 Mass. L. Rptr. 394, 2002 WL 31667318 at *3 (Mass.Super. 2002). Here, the Supreme Judicial Court’s decisions in Leavitt and Coombes, both decided after the court’s 2005 decision, bear upon the issues raised in the defendant’s motion for summaiy judgment now before the court. Further, although a trial judge should hesitate to undo her own or another judge’s work, this court may reconsider an issue of law until a final judgment is entered. See Sullivan v. Utica Mutual Insurance Co., 439 Mass. 387, 401 (2003); Peterson v. Hopson, 306 Mass. 597, 603 (1940).
Developments in the law since the court’s 2005 decision, namely the Coombes and Leavitt decisions, which directly address a physician’s duty to third parties, warrant reconsideration of the issue of the defendant’s duty now raised by the defendant’s motion for summaiy judgment. See McGonagle v. Home Depot, U.S.A., Inc., 75 Mass.App.Ct. 593, 597, 599 n.8 (2009) (noting that Superior Court judge reconsidered earlier summaiy judgment decision “[i]n light of the [Supreme Judicial Court’s] intervening decision” on relevant issues, and holding that “intervening development of law would constitute a ‘change of circumstance’justifying reconsideration”). Contrary to the plaintiffs argument, these decisions do clarify the law relevant to the plaintiffs claim. To the extent the plaintiffs claim may rest on a physician’s duty to control a patient, the Leavitt decision is directly on point. Further, the court’s rationale in the 2005 decision for recognizing a duty of Dr. Hochberg to the public was based in large part on its finding of a “special relationship” between Dr. Hochberg and his patient, Riskind. The Supreme Judicial Court in both Leavitt and Coombes, however, ruled that there was no “special relationship” between a physician and a patient that would give rise to a duly of a physician to a third party. See Leavitt, 454 Mass. at 41-42, n. 12 (duty to control); Coombes, 450 Mass. at 187 (Ireland, J., concurring); id. at 205 (Marshall, C.J., dissenting); id. at 207, n.3 (Cordy, J. dissenting) (duty to warn). Accordingly, the issue of Dr. Hochberg’s duty to the plaintiff should be reexamined in light of the Leavitt and Coombes decisions.
As stated in the amended complaint, the plaintiffs negligence claim appears grounded upon two different theories. The amended complaint may fairly be interpreted as asserting a negligence claim based upon Dr. Hochberg’s failure to control his patient, Riskind, as well as a negligence claim based upon Dr. Hochberg’s failure to warn his patient not to drive because of risks caused by his health condition.
I. Duly to Control
As the defendant correctly argues, and as the plaintiff apparently concedes,[8] the plaintiffs negligence claim, to the extent that it is grounded upon the theoiy that Dr. Hochberg failed to control his patient, Riskind, and stop him from driving, is not cognizable under Massachusetts law. In Leavitt, the Supreme Judicial Court refused to recognize “a duty to a third person of a medical professional to control a patient . . . arising from any claimed special relationship between the medical professional and the patient.” Leavitt, 454 Mass, at 41-42. Accordingly, the defendant owed no duty to the plaintiff to control Riskind, and the defendant is entitled to summaiy judgment insofar as the plaintiffs negligence claim is based upon an alleged duty of the defendant to control his patient and stop him from driving.
II. Duty to Warn
The plaintiffs negligence claim is also grounded upon a theoiy that the defendant Dr. Hochberg owed a duty to the plaintiff, a third party, to warn his patient, Riskind, not to operate a motor vehicle due to the foreseeable risk of injuiy to innocent bystanders. *330 As stated by the plaintiff in his opposition and as revealed by the summary judgment record, the plaintiff claims that the defendant Dr. Hochberg owed the plaintiff a duty to warn Riskind of the dangers of driving caused by his underlying medical condition— seizures resulting from an inoperable brain tumor-— and that he was negligent in failing to warn Riskind of the risks of driving with such a condition. The plaintiff articulates his claim in his opposition as follows: “The only duty that Plaintiff holds Defendant-Hochberg to is the duty to warn his patient about the inherent danger he poses to himself and others of driving while suffering from chronic, ongoing seizures associated with an inoperable, malignant brain tumor.” The plaintiff does not claim that any medication prescribed or treatment rendered by the defendant caused Riskind to suffer a seizure while driving or increased the risks of Riskind driving; he does not claim that the defendant was negligent in failing to warn Riskind of the side effects or the danger of driving caused by any medication he prescribed or treatment he rendered. The summary judgment record, including the plaintiffs expert’s opinion, does not support such a claim. Rather, the plaintiffs claim is simply that the defendant was negligent in failing to warn Riskind of the dangers of driving due to his underlying health problems for which he was being treated by the defendant Dr. Hochberg.
In Coombes v. Florio, 450 Mass. 182 (2007), the Supreme Judicial Court considered the question of whether a physician owes a duly to persons other than his patient for harm caused by his failure to warn the patient of the effects of his treatment of that patient, specifically the effects of medication prescribed to the patient. Coombes, 450 Mass. at 183 (Ireland, J., concurring). In Coombes, while under the care of the defendant physician, the patient lost control of his vehicle and struck the plaintiffs decedent. Id. at 184 (Ireland, J., concurring). The plaintiff sued the defendant for “negligently prescribing medication without warning [the patient] of the dangers posed by its side effects, and without warning [the patient] not to drive.” Id. at 185 (Ireland, J., concurring). The lower court granted the defendant’s motion for summary judgment on the basis that he “owed no duty of care to anyone other than his own patient[,]” id. at 184 (Ireland, J., concurring), and that “there was no special relationship” between the doctor and the plaintiffs decedent. Id. at 185 (Ireland, J., concurring).
In a plurality decision, with only six Justices participating, a divided Supreme Judicial Court reversed the allowance of summary judgment and remanded the case to the superior court. Id. at 183 (Ireland, J., concurring). The Justices issued separate opinions concurring with and dissenting from this decision: (1) a concurring opinion was authored by Justice Ireland, with whom Justices Spina and Cowin joined, id. at 183-95; (2) an opinion was authored by Justice Greaney, who concurred in part and dissented in part, id. at 195-201; (3) an opinion was authored by Chief Justice Marshall, who dissented, id. at 201-06; and (4) an opinion was authored by Justice Cordy, who dissented. Id. at 206-13. A majority of the court in Coombes ruled that a physician may be liable to a third parly for failing to warn his patient of the known side effects of medication prescribed by the physician that might affect the patient’s ability to drive a motor vehicle safely. Id. at 190, 194 (Ireland, J., concurring); id. at 196 (Greaney, J., concurring in part, dissenting in part); see Vasa v. Compass Medical, P.C., 456 Mass. 175, 180 n.6 (2010) (“a majority of the court agreed that the plaintiff had stated a claim against the defendant physician for injuries that the plaintiffs decedent suffered as a result of the defendant’s negligent provision of medical treatment despite the fact that the plaintiffs decedent was not the defendant’s patient”). In the concurring opinion authored by Justice Ireland and joined by Justices Cowin and Spina, Justice Ireland concluded “that a physician owes a duty of reasonable care to eveiyone foreseeably put at risk by his failure to warn of the side effects of his treatment of a patient.” 450 Mass, at 190 (Ireland, J., concurring). Justice Greaney, concurring in part and dissenting in part, disagreed with Justice Ireland’s broad recognition of a duty owed by a physician to non-patients, but agreed that liability should be extended for the benefit of non-patient, third parties where “a physician who has knowledge of a danger that may be posed to others from a patient’s decision to operate a motor vehicle while under the influence of prescribed medication . . . does not warn the patient of the risks involved . . .” Id. at 196 (Greaney, J., concurring).
The Court in Coombes, however, did not address whether a physician may be liable to a third party for failing to warn his patient of the risk of driving with his underlying health problem because that issue was not properly before the Court. Id. at 186, n.4. Coombes, therefore, provides no authority for the claim asserted by the plaintiff against Dr. Hochberg, which is grounded on Dr. Hochberg’s failure to warn Riskind of the risks of suffering a seizure while driving due to his medical condition. The appellate courts of Massachusetts thus have not addressed whether a physician owes a duty to the general public to warn his patient of the dangers of driving caused by the underlying health condition for which he is receiving treatment.
Based upon the reasoning of the Supreme Judicial Court in Coombes and Leavitt, and upon consideration of existing social values and customs and appropriate social policy, this court concludes that under Massachusetts law, a physician does not owe a duly to all members of the general public, who are not his patients, to warn his patient not to drive because of the potential dangerous risks of driving caused by his underlying medical condition. Dr. Hochberg thus owed no duty to the plaintiff to warn Riskind not to drive because of the risks of driving with his medical condi *321 tion. Such a duty cannot be based upon any “special relationship” between Dr. Hochberg and his patient, Riskind. As the court ruled in Leavitt and a majority of the Justices concluded in Coombes, no “special relationship” exists between a physician and his patient which gives rise to a duty of a physician to third parties, either to control his patient or to warn him. Leavitt, 454 Mass. at 41-42, n. 12; Coombes, 450 Mass. at 187 (Ireland, J., concurring); id. at 205 (Marshall, C.J., dissenting); id. at 207, n.3 (Cordy, J. dissenting). A physician also has no special relationship with members of the general public which creates such a duty. See Leavitt, 454 Mass. at 42, n.11 (rejecting argument of such a relationship based upon Irwin v. Ware, 392 Mass. 745 (1984)). Additionally, no Massachusetts statute or regulation imposes such a duty on physicians for the benefit of the public.[9] While the regulations promulgated by the Registry of Motor Vehicles (RMV) require a licensee to report to the RMV a “seizure, syncope, or any other form of altered consciousness” that may affect his ability to drive safely, 540 C.M.R. §§24.03(1), 24.05(1), the regulations do not impose any duty on a physician to report any medical condition of a patient which may affect his ability to drive.
Furthermore, unlike in Coombes, principles of ordinary negligence do not support the imposition of such a duty on a physician, for the benefit of third parties, to warn his patient of the danger of driving because of the effects of his medical condition. Imposing a duty to third parties upon the physician in Coombes was warranted because it was the affirmative act of the physician in treating the patient with medication having dangerous side effects that created or increased the risk of harm to the general public. As stated by Justice Ireland, “(i]t was [the physician’s] own act of prescribing medication that created the foreseeable risk of an accident, and his duty to warn flows from that act and extends to all those foreseeably put at risk by it.” Here, Riskind’s medical condition— an inoperable brain tumor and seizures — created the risk of harm to the general public when he drove. No treatment provided or medication prescribed by Dr. Hochberg impaired Riskind’s driving or created or increased the risk to the plaintiff. Dr. Hochberg’s treatment of Riskind with medication actually controlled his seizures, thereby alleviating and reducing the potential risks. The simple act of accepting Riskind as a patient, with his preexisting medical condition, cannot be the basis for imposing a duty on Dr. Hochberg to an unlimited number of people with whom he has no relationship, with attendant liability for harm caused by the effects of the medical condition, and not caused by any act of Dr. Hochberg. The argument that Dr. Hochberg’s agreement to treat Riskind created the risk because Riskind may have sought treatment from another physician who may have warned him of the dangers of driving because of his risk of seizures is too speculative to justify expansion of a physician’s liability to all members of the general public for risks caused by a patient’s health condition. Where no act of Dr. Hochberg created or increased the risk of harm, imposing such a duty is not sound public policy.
The duty the plaintiff asks the court to recognize here is far broader than the duty recognized in Coombs and would greatly expand the liability of physicians. If such a duty were imposed, all physicians would be potentially liable for risks to the general public caused by their patients’ health conditions. The health conditions with symptoms that may interfere with driving or other activities are numerous. For example, cardiovascular disease, hypertension, cancer, vertigo, diabetes, and migraines all pose risks that might interfere with the safe operation of a motor vehicle. Were a duty of a physician to third parties to be recognized where a patient suffers from seizures, the courts would have difficulty drawing the line as to which health conditions creating a risk to the public justify imposing liability on a physician for failing to warn his patient. Consequently, recognizing such a duty would significantly increase litigation against doctors by third parties and the resulting costs, all at a time when our health care system is overwhelmed with costs. See Coombes, 450 Mass. at 205-06 (Marshall, J., dissenting); id. at 212-13 (Cordy, J., dissenting).
Further, imposing a duty on a physician to protect the public from the dangers caused by the health problems of his patient would interfere with the physician-patient relationship and the physician’s care and treatment of his patient. See id. at 211-12 (Cordy, J., dissenting). As a matter of sound social policy, the focus of the physician-patient relationship is the well-being of the patient, and the patient alone. Imposing a duty on physicians to the public in the circumstances here may compromise a physician’s first loyalty and duty to his patient and affect his treatment decisions and advice, such that the well-being of the patient is compromised. Having a duty to the general public and the attendant liability, a doctor likely will be more restrictive in advising a patient against participating in life’s activities, which may not be in the best interests of the patient. Having only a duty to his patient, a physician may not warn a patient against engaging in an activity, such as driving, where in the exercise of his medical judgment, he determines that the risks of a patient engaging in the activity are minimal, when compared to the benefits to his patient. Where such a physician also must consider his duty to the public, however, he may advise his patient not to participate in such activity even though the patient’s quality of life and health would be diminished. Moreover, recognizing such a duty will invade the confidentiality of the physician-patient relationship because third parties injured by an individual with some medical condi *323 tion will invariably be seeking to obtain the medical records of that individual and to learn of the communications between the doctor and his patient. See id. at 213 (Cordy, J., dissenting). Preservation of the highly personal, confidential, and exclusive physician-patient relationship, valued by our society and protected by our law, weighs against the expansion of a physician’s duly to third parties in these circumstances.
For the foregoing reasons, this court concludes that Dr. Hochberg did not owe a duty to the plaintiff to warn his patient, Riskind, of the risks of driving with his medical condition.[10] Accordingly, Dr. Hochberg’s motion for summary judgment will be ALLOWED.
The defendant also asks this court to rule that even if such a duty of a physician were recognized under Massachusetts law, as a matter of law, 1) Dr. Hochberg had no such duty to warn Riskind of the effects of his medical condition or the dangers of driving with his condition because the record demonstrates that Riskind was fully aware of the risks, and 2) if such a duly to warn were required, Dr. Hochberg discharged that duty. Based upon the evidentiaiy record before the court, the court finds that if a duty to warn were imposed on Dr. Hochberg for the benefit of the plaintiff, genuine issues of material fact exist as to whether such a warning was required on the facts in this case and whether Dr. Hochberg sufficiently discharged his duty to warn. As the court has concluded that Dr. Hochberg did not have a duty to warn, however, such genuine issues of material fact do not preclude summary judgment in Dr. Hochberg’s favor.
ORDER
For the foregoing reasons, Dr. Hochberg’s motion for summary judgment is ALLOWED.

Dr. Riskind died on June 28, 2002 at age fifty-five.

At one point in his deposition, Dr. Hochberg testified that during one of his appointments with Riskind, Dr. Hochberg informed him of his obligation to report his seizure to the Registry of Motor Vehicles; he did not thereafter ascertain if Riskind made this notification. Later in his deposition, Dr. Hochberg testified that he had “[n]o memory one way or the other” whether he instructed Riskind to notify the Registry of Motor Vehicles of his seizure.

At his deposition, Dr. Hochberg testified that these “spells [were] short lived, only involved a sensation, did not spread to other parts of the body, did not produce motor activity, did not produce confusion, speech changes or headache . . . [N]one of the spells produced any effects that, even during the time or thereafter, restricted his activities.” He also testified that, whenever Riskind reported having these seizures to Dr. Hochberg, Dr. Hochberg would ask, “Have you had incoordi-nation, loss of motor activity, loss of attention, loss of intellect, loss of speech, loss of posture associated with these spells? . . . [I]n the six months that [Dr. Hochberg] followed him through March 10th of 2001, none of those events had ever occurred.”

At his deposition, Dr. Hochberg explained that, by “customary activities” he was referring to the fact that Riskind “felt that he could not perform his psychiatric practice as he was feeling as of November of 2001, and likewise, could not feel comfortable making administrative decisions at that time.”

The court initially allowed the motion “without opposition” on April 25, 2005. The defendant thereafter moved for reconsideration, seeking an opportunity to oppose the motion. The court reconsidered its allowance of the motion to amend and again allowed the motion.

The plaintiff asserts that the defendant misinterprets his claim as one which is based upon a duty of the defendant to control his patient’s ability to drive. The amended complaint, however, repeatedly refers to the defendant’s failure to control his patient in describing the defendant’s negligent conduct, and thus can fairly be interpreted to assert a negligence claim grounded upon such an alleged duty.

Other' states have imposed a reporting obligation on physicians. See 21 Del.C. §1763 (requiring physician treating epilepsy to report the names and addresses of the patient to the Division of Motor Vehicles); 75 Pa. C.S.A. §1518 (imposing on physicians the affirmative duty to report to the Department of Transportation “the name, date of birth, and address of each person diagnosed as having a specific disorder or disability”). In Pennsylvania, despite this obligation, the Supreme Court of Pennsylvania in Estate of Witthoeft v. Kiskaddon, 557 Pa. 340, 344 (1999), declined to impose a duty to third-party motorists where the defendant ophthalmologist failed “to inform [his patient] of her poor visual condition!,]” id. at 349, and the Pennsylvania Superior Court declined to impose on the physician a duty to third parties where the patient “knew of his seizure disorder and knew that he had previously suffered blackouts while driving.” Hospodar v. Schick, 885 A.2d 986, 990 (Pa.Super. 2005). The court in Estate of Witthoeft reasoned that it would be “an unreasonable extension of the concepts of duty and foreseeability to broaden a physician’s duty to a patient and hold a physician liable to the public at large . . . where . . . [the physician] did not cause or aggravate a medical condition that affected the patient’s driving and the patient was necessarily aware of her medical condition.” Id. at 353. As a result, the court refused to “stretch foreseeability beyond the point of recognition for to do so [would] be to make liability endless. To allow liability in this case would be to make physicians absolutely liable for the various acts of their patients.” Id. This court finds this reasoning persuasive.

This ruling is in accord with the decisions of several other state courts to consider the issue. See Schnidt v. Mahoney, 659 N.W.2d 552, 554-55 (Iowa 2003); Kolbe v. State, 661 N.W.2d 142, 148-50 (Iowa 2003); Estate of Witthoeft v. Kiskaddon, 557 Pa. 340, 344 (1999); Praesel v. Johnson, 967 S.W.2d 391, 396-98 (Texas 1998); Calwell v. Hassan, 260 Kan. 769, 787 (Kansas 1996); Young v. Wadsworth, 916 S.W. 877, 878-79 (Missouri 1996); Werner v. Varner, Stafford & Seaman, 659 So.2d 1308, 1309-11 (Florida 1995); Hospodar v. Schick, 885 A.2d 986, 990 (Pa.Super. 2005); contra Harden v. Allstate Ins. Co., 883 F.Sup. 963, 971-72 (D.Del. 1995) (finding a duty of a physician to third party based upon a “special relationship”); Duvall v. Golden, 139 Mich.App. 342, 350-51 (1985) (finding a duty of a physician to third party based upon a “special relationship”); Myers v. Quesenberry, 144 Cal. App. 3d 888, 892-93 (1983) (finding a duty of a physician to third party based upon a “special relationship”); Kochick v. Hanna, 2010 WL 1752577, at *1-2 (W.D.Okla. 2010).