MARY OUELLETTE *vs.* BETHLEHEM-HINGHAM SHIPYARD, INC.

Norfolk. April 10, 1947. — June 4, 1947.

Present: FIELD, C.J., QUA, DOLAN, WILKINS, & SPALDING, JJ.

*Motor Vehicle*, Operation. *Negligence*, Motor vehicle, Violation of rule.

Evidence of the circumstances attending an unauthorized appropriation of a fire truck, lettered "U. S. Navy" and bearing "USN" registration plates, by one employed by a shipbuilding corporation as a third class rigger and of his driving it when drunk from the corporation's yard and colliding with and injuring a pedestrian on a public way would not have warranted a finding of negligence of guards in not preventing the passing of the truck from the yard or of violation of any rule of the corporation intended to protect a pedestrian on a highway.

TORT. Writ in the Superior Court dated February 29, 1944.

The case was tried before *Donahue*, J.

*D. Short & H. J. Williams*, for the plaintiff, submitted a brief.

*S. Burr*, for the defendant.

WILKINS, J. The plaintiff, a minor, while a pedestrian on a public way in Weymouth, was hurt by reason of the negligent, or other improper, operation by one Donovan of a fire truck, which was lettered "U. S. Navy", bore "USN" plates, and was commonly kept in the defendant's shipyard in Hingham. The declaration is in five counts, respectively alleging negligent operation by an agent of the defendant; operation by an agent of the defendant of an automobile not properly registered; creation of a nuisance upon a public way by permitting an improperly registered

automobile to be removed from its yard; negligent conduct permitting an unfit person to operate a motor vehicle upon a public way; and conduct allowing Donovan to operate an automobile upon a public way in violation of G. L. (Ter. Ed.) c. 90. Subject to the plaintiff's exception, the judge allowed the defendant's motion for a directed verdict in its favor on all counts. The plaintiff also excepted to the exclusion of certain evidence.

The jury could have found these facts: The plaintiff was injured about 5:30 P.M. on November 27, 1943. Donovan, who was drunk at that time, was in the employ of the defendant as a third-class rigger, and was assigned to the second shift, which worked from 3:30 P.M. to 11:30 P.M. He held no license to operate motor vehicles in this State, and was not a member of the defendant's fire department. According to the records, he did no work on November 27 for which he was paid. The records did not indicate one way or the other whether he entered the shipyard on that day, but did show that his time card inside the main gate was not punched. About 5:10 P.M. a member of the defendant's fire department left the fire truck, with the motor running, in front of the fire station, which was about two hundred yards from the main gate. Inside the station, the doors of which were closed, were twelve men working at a bench but ready for instant call. The records show that the fire truck left the yard at 5:14 P.M. The guard at the main gate saw it pass through without stopping, did not identify its driver, but reported its number to the defendant's police station. The practice during two and one half years had been to require drivers of fire apparatus to slow down, identify themselves, and disclose their destination. The guard first had seen the fire truck at a distance of seventy-five feet, while he was occupied in taking badge numbers of persons passing through an opening used by pedestrians. He next had observed it thirteen feet away moving at a speed of twenty-five miles an hour. The gate for vehicles was in two parts, each two and one half yards wide, one for incoming, and the other for outgoing, traffic. The gate did not swing like a door, but was closed by taking hold thereof

and sliding it after releasing a catch by a movement of the foot. The guard could have closed the gate in two seconds, but did not do so, because he did not know that the truck was "going past." There were in force certain printed rules and regulations of the defendant quoted in a footnote.[1] In addition, the guard had been instructed that, in the event of attempted use of the exit by an unauthorized vehicle, he should try to stop it by getting in front of it, but if it was going too fast, he should get out of the way. The guards were required to keep the gates closed during working hours when no one was passing in or out. The practice was to require the showing of badges at shift changes, and the showing of a pass at other times.

The vehicle in question was a service maintenance truck, painted red, of about one half or three quarters of a ton capacity, equipped with fire extinguishers, hose, a red light on top, and a siren. It was designed primarily to service other fire apparatus and secondarily to be an independent fire fighting unit. The truck went to the gate twelve to fifteen times a day, but had occasion to leave the yard only under certain conditions: to assist in a general alarm fire in a nearby town, in which occurrence the large pieces of fire apparatus would be used and the truck would not leave the yard alone; to go to a fire in the hospital and adminis- tration buildings, in which event the guards would probably hear the audible alarm; and to attend a fire in the dump or parking lot, where there were no fire alarm boxes; in which

---

[1] 1. (Directed to the guards at the gate.) "Be vigilant in seeing that only persons or vehicles having legitimate business in the plant are permitted to enter."

5. "No one must enter or leave the yard without proper badge or pass."

6. "All passenger cars and trucks entering or leaving the yard must use the main gate."

18. "Employees wishing to leave or enter the yard during off shifts must present a yellow employee's pass with his department number, name and reasons. These passes are only valid when signed by authorized foremen, quartermen or individuals listed as authorized to sign such passes. The pass will be picked up and the time stamped on it."

19. "All persons entering or leaving this yard must be recorded by the gatemen except at the change of shifts, and for the period of grace allowed before and after change of shifts."

22. "No person under the influence of liquor is to be allowed admittance to this yard. All guards should be notified if a person is turned away for the above reason, a description of the man is necessary. His department should be notified and the police station informed."

case the yard would be notified by telephone. None of these conditions existed at 5:14 P.M. As no shift change was in operation when the truck left the yard, the gate was required to be closed.

1. A verdict was rightly directed for the defendant on the first count for negligent operation by an agent. There was no evidence that Donovan was acting within the scope of his employment. *Hartnett* v. *Gryzmish,* 218 Mass. 258. *Porcino* v. *De Stefano,* 243 Mass. 398. *Vallavanti* v. *Armour & Co.* 260 Mass. 417, 418. As the truck was not registered in the name of the defendant as owner, G. L. (Ter. Ed.) c. 231, § 85A, did not apply.

2. The plaintiff could not recover on the second count for operation of an improperly registered automobile. Not only was there no evidence of agency, but there is no statutory requirement that an automobile used in the service of the United States Navy should be registered in this State.

3. The third count, of which the gist is permitting an improperly registered automobile to be removed from the yard, also fails for want of proof of such an automobile.

4. The fourth count is based upon negligently permitting an unfit person to operate a motor vehicle upon a public way. There was, however, no evidence of negligence. The defendant was not liable merely because a person without authority took the truck after it had been left unlocked and with the motor running in front of the fire station. *Slater* v. *T. C. Baker Co.* 261 Mass. 424. *Sullivan* v. *Griffin,* 318 Mass. 359. *Pochi* v. *Brett,* 319 Mass. 197, 204. The case of *Malloy* v. *Newman,* 310 Mass. 269, 274, is not an authority for the plaintiff. See *Strogoff* v. *Motor Sales Co. Inc.* 302 Mass. 345, 348, and cases cited. It could not have been found that the defendant was negligent in not preventing Donovan from taking the truck. The record contains nothing indicating that he was seen to take it, much less that he was observed, or should have been observed, in season to prevent his doing so. There was no evidence of negligence by the guards at the gate. The testimony fails to disclose that they should have realized that the truck, contrary to practice, was to pass through the gate without stopping, or

that Donovan was the driver, or that he was drunk. It did not appear that there was any violation of the regulations, which were designed to afford security in the building of ships. But if there had been any violation, the plaintiff did not belong to the class of persons in reference to whose safety the rules were adopted. *Peterson* v. *Boston & Maine Railroad*, 310 Mass. 45, 53–54, and cases cited. See *Neu* v. *McCarthy*, 309 Mass. 17, 24–25. There was no error in directing a verdict on the fourth count.

5. The fifth count is for allowing Donovan to operate an automobile in violation of G. L. (Ter. Ed.) c. 90. The plaintiff relies upon § 12 of that chapter, which reads, "No person shall allow a motor vehicle owned by him or under his control to be operated by any person who has no legal right so to do, or in violation of this chapter." As has been seen, there was no evidence that the defendant allowed Donovan to operate the truck. A verdict for the defendant was properly directed on this count.

6. There was no error in the exclusion of evidence of statements made after the accident by an unnamed individual at "the defendant's rigging department" to the effect that he had sent Donovan home shortly after five o'clock because he had been drinking too much and was not fit to work. It was not shown that this individual was an agent of the defendant. *Cutler* v. *Jordan Marsh Co.* 265 Mass. 245, 247. But if it be assumed that he was, his statements could not bind his employer as admissions of liability. *Williamson* v. *Cambridge Railroad*, 144 Mass. 148, 150. *Murphy* v. *Fred T. Ley & Co. Inc.* 210 Mass. 371, 373. *Cleary* v. *First National Stores Inc.* 291 Mass. 172, 174, and cases cited. *Ventromile* v. *Malden Electric Co.* 317 Mass. 132, 135.

*Exceptions overruled.*