SUPERIOR COURT 
 
 RICKY J. FRENI v. UBER TECHNOLOGIES, INC., RASIER, LLC, GUILHERME ROCHO and JAMES RIVER CASUALTY COMPANY

 
 Docket:
 2184CV00326-C
 
 
 Dates:
 August 10, 2021
 
 
 Present:
 /s/Robert B. Gordon Justice of the Superior Court
 
 
 County:
 SUFFOLK, ss.
 

 
 Keywords:
 MEMORANDUM OF DECISION AND ORDER ON DEFENDANT GUILHERME ROCHO’S MOTION FOR JUDGMENT ON THE PLEADINGS
 
 

             Plaintiff Ricky J. Freni (“Freni”) has brought a three-count Amended Complaint in which he asserts negligence claims arising out of an automobile collision in which he sustained serious personal injuries. At the time of the collision, Freni was seated in a parked truck that was impacted by an Uber vehicle. The Uber vehicle was then being driven by an intoxicated passenger named Matthew R. Tyre (“Tyre”), who had assaulted the automobile’s paid driver, Guilherme Rocho (“Rocho”), and thereby caused the driver to abandon the vehicle and flee on foot. When Rocho left car keys in the ignition to escape his assailant, Tyre commandeered the vehicle and proceeded to crash it into Freni’s truck. Freni’s suit seeks, inter alia, to hold Rocho liable in negligence for failing to employ reasonable safety measures and precautions that would have prevented the Tyre carjacking and the resulting automobile collision.
                                                            -1-
            Presented for decision is Defendant Rocho’s Motion for Judgment on the Pleadings. By this motion, Rocho seeks the dismissal of Plaintiff’s negligence claim against him on the grounds that (1) he owed no duty to protect Freni from the criminal conduct of third parties, and (2) Tyre’s carjacking was an intervening and independent act that broke the chain of proximate cause between Rocho’s conduct and Freni’s injuries. Having reviewed the submissions of the parties, and following a hearing, the Court agrees that the Plaintiff’s Amended Complaint states no viable cause of action against Rocho. Count I of the Amended Complaint, therefore, must be DISMISSED as to this Defendant.
BACKGROUND
            The Plaintiff’s Amended Complaint, which the Court construes in the light most favorable to its claims, Lipsitt v. Plaud, 466 Mass. 240, 241 (2013), sets forth the following material facts. (Although the Defendant’s motion is brought pursuant to Mass. R. Civ. P. 12(c), the Court finds that the sole cause of action asserted against Rocho is properly tested by reference to the sufficiency of Plaintiff’s pleading and supporting materials alone.)
            In the late evening hours of February 27, 2019, Rocho was serving as a driver for the ride-sharing internet application known as Uber. Uber operates a technology platform that brings together paying passengers who seek vehicular transportation with approved drivers available to provide it. Shortly before midnight, Rocho responded to a ride-share request from Tyre and picked him up for transport in East Boston. At all times relevant during their ensuing ride, Tyre was “intoxicated and violent” and “engaged in multiple threats to Rocho.”[1] Tyre’s assault
---------------------------------------
[1] Although the Amended Complaint is ambiguous as to whether Tyre’s assault on Rocho entailed both verbal threats and physical battery, the Plaintiff’s Opposition quotes documents making clear that physical violence was very much part of the attack. See Plaintiff’s Opposition, at 5 (noting that Tyre “deliver[ed] two closed-fist strikes to the arm of Rocho” and “threw a glass bottle of Johnnie Walker Whiskey at him” as “Tyre chased him out of the car”). Although this clarification is not drawn from the Amended Complaint itself, it appears undisputed as a factual matter, is reflected in the Plaintiff’s own submissions to the Court, and bears materially on the viability of Freni’s negligence claim against Rocho. The Court takes further notice of public records reflecting that Tyre pleaded guilty to Assault and Battery by Means of a Dangerous Weapon in connection with the events of February 27, 2019. See Commonwealth v. Matthew Ricco Tyre, Docket No. 1914CR000413 (Dist. Ct. Dept. Chelsea Div.). See also Jarosz v. Palmer, 436 Mass. 526, 536 (2002) (judicial notice may be taken of court records in related action); Mass. G. Evid. § 201(b)(2) and related note (2021 ed.). The Court thus considers these documented facts when passing on the Defendant’s Rule 12 motion. See Marram v. Kobrick Offshore Fund, Ltd., 442 Mass. 43, 45 n.4 (2004).
                                                            -2-
prompted Rocho to pull over to the side of the road and exit the running automobile. This, in turn, led Tyre to “commandeer and/or carjack” the Uber vehicle, and then to crash the car into Freni’s stationary truck. Freni suffered serious personal injuries as a result of this collision.
            The Amended Complaint charges that Rocho recklessly “allowed for and enabled the intoxicated and violent passenger known as Tyre to commandeer and/or carjack the running Uber vehicle.” (Am. Compl. at para. 18.) More specifically, the Amended Complaint alleges that Rocho “did fail to act to safeguard and protect Plaintiff Freni by failing to turn off and/or disable the Uber vehicle and remove the keys and/or employ a kill switch, knowing said failure would present an imminent risk [of] harm and bodily injury to the Plaintiff.” (Am. Compl. at para. 19.)
DISCUSSION
            A motion for judgment on the pleadings filed pursuant to Mass. R. Civ. P. 12(c) is “actually a motion to dismiss … [that] argues that the complaint fails to state a claim upon which relief can be granted.” Jarosz v. Palmer, 436 Mass. 526, 529 (2002), quoting J.W. Smith & H.B. Zobel, Rules Practice § 12.16 (1974). Accordingly, “all factual allegations pleaded by the nonmoving party must be accepted as true, and contravening assertions by the moving party are to be taken as false.” Welch v. Sudbury Youth Soccer Ass’n., 453 Mass. 352, 354 (2009). “Judgment on the pleadings may be entered if the plaintiff fails to present sufficient facts in the complaint to support the legal claims made.” Flomenbaum v. Commonwealth, 451 Mass. 740,
742 (2008).
                                                            -3-
            “A viable negligence claim requires a showing that a defendant owes a duty of reasonable care to the plaintiff, the defendant committed a breach of that duty, the plaintiff suffered damage, and a causal relationship existed between the breach of duty and the damage.” Heath-Latson v. Styller, 487 Mass. 581, 584 (2021). Accord Helfman v. Northeastern Univ., 485 Mass. 308, 315 (2020) (same). The existence of a legal duty vel non is a question of law for the Court, and is properly decided on a motion to dismiss. See Leavitt v. Brockton Hospital, Inc., 454 Mass. 37, 40 (2009).
            “Under our case law, [one does] not owe others a duty to take action to rescue or protect them from conditions [one has] not created.” Nguyen v. Massachusetts Inst. of Tech., 479 Mass. 436, 448 (2018) (citation and quotation omitted). Accord Helfman, 485 Mass. at 315 (quoting Restatement (Third) of Torts: Phys. & Emot. Harm § 37 (2012)).  The law generally provides that this no-duty rule extends to the criminal acts of third parties. See Heath-Latson, 487 Mass. at 584 (the duty of care “generally does not extend to taking ‘affirmative steps to protect against dangerous or unlawful acts of third persons’”) (quoting Luoni v. Berube, 431 Mass. 729, 731 (2000)); Helfman, 485 Mass. at 315 (same); Jupin v. Kask, 447 Mass. 141, 148 (2006) (same).
            There is, however, a recognized exception to this rule. A duty to protect against harm caused by the conduct of a third person will arise when there exists a “special relationship” between a defendant and a plaintiff such that the defendant “reasonably could foresee that he would be expected to take affirmative action to protect the plaintiff and could anticipate harm to the plaintiff from the failure to do so.” Adams v. Congress. Auto Ins. Agency, Inc., 90 Mass. App. Ct. 761, 765 (2016) (quoting Irwin v. Ware, 392 Mass. 745, 756 (1984)). In the commercial setting, such a special relationship has been found to exist between colleges and matriculating
                                                            -4-
students, see Helfman, 485 Mass. at 316-18, and between hoteliers and their guests, see Fund v. Hotel Lenox of Boston, Inc., 418 Mass. 191, 192-93 (1994).
            In the case at bar, the Amended Complaint makes clear that Freni’s injuries were caused directly by the criminal behaviors of Tyre. Tyre carjacked an Uber vehicle by threatening and physically assaulting its driver, and then recklessly drove the vehicle while intoxicated until he collided into Freni’s truck. Rocho was himself a victim of Tyre’s criminal conduct, and played no part in causing the collision that resulted in Freni’s injuries. A licensed driver employed by Uber[2] and engaged by a passenger to provide transportation services, Rocho had no relationship – special or otherwise – with Freni such as would attach a duty of care to protect him from Tyre’s wrongdoing.
            The presumption under Massachusetts law, therefore, is that Rocho cannot be held liable for injuries to the Plaintiff caused by Tyre’s criminal conduct. Indeed, this operation of the no- duty rule appears to find long-standing support in closely analogous cases involving defendants who left keys in the ignition of a vehicle that was then stolen and used to commit injurious torts.[3] See, e.g., Jesionek v. Massachusetts Port Auth., 376 Mass. 101, 104-05 (1978) (“this court has held that negligence in leaving keys in the ignition of a parked car is not the proximate cause of injuries resulting from the operation of the car by a thief”; further observing that “[t]he cases which have absolved an owner of a vehicle of liability when that vehicle has been stolen … represent an independent legal judgment that individuals are not bound to anticipate or guard against the actions of thieves”). Accord Poskus v. Lombardo’s of Randolph, Inc., 423 Mass. 637,
-------------------------------------
[2] The Court acknowledges that Rocho’s status – Uber employee or independent contractor – is a matter of dispute among the parties, the resolution of which is not material to the within decision.
[3] The rule is alternately expressed in terms of failed proximate cause, the intervening criminality of the third party who stole the vehicle deemed to break the causal chain between the original owner’s negligence and the plaintiff’s injuries. See infra.
                                                            -5-
640 (1996) (rejecting argument that nightclub which negligently allowed customer’s vehicle to be stolen was liable to police officer injured during subsequent chase involving stolen vehicle, stating that “the reasonably foreseeable risk of harm to others created by [the nightclub’s negligence] did not include harm caused when the thief resisted arrest”); Galbraith v. Levin, 323 Mass. 255, 261 (1948) (no liability where defendants left vehicle unattended with keys on top of visor, and vehicle was subsequently stolen and involved in accident: “the conduct of the thief was an intervening cause which the defendants were not bound to anticipate and guard against”); Ouellette v. Bethlehem-Hingham Shipyard, Inc., 321 Mass. 390, 393 (1947) (fire department not liable for injuries caused by accident involving fire truck stolen by thief, even though department employees had left vehicle unlocked and running in front of station: “The defendant was not liable merely because a person without authority took the truck after it had been left unlocked and with the motor running in front of the fire station”); Sullivan v. Griffin, 318 Mass. 359, 361 (1945) (denying recovery to plaintiff whose decedent was killed by a car stolen from defendant, even though theft occurred because defendant had left ignition key in unattended vehicle in violation of statute: “the injuries here were not a proximate result of the defendant’s negligence”); Slater v. T.C. Baker Co., 261 Mass. 424, 425 (1927) (upholding directed verdict against negligence claim where third party had stolen defendant’s automobile and thereafter caused death of plaintiff’s decedent: “the larceny of the automobile and its use by the thief were intervening independent acts” defeating proximate cause); Wilson v. Lawrence, 2004 Mass. Super. LEXIS 664, at *6-8 (Mass. Super. Ct. 2004) (McEvoy, J.) (holding car dealership not liable for plaintiff’s injuries because dealership’s alleged negligence in failing to prevent theft of vehicle was not proximate cause of injuries where third party broke into locked vehicle, drove to another city, and hours later recklessly crashed it into plaintiff’s vehicle). These decisions control
                                                            -6-
the case at bar, where Plaintiff similarly seeks to hold Rocho responsible for a car collision because his alleged negligence allowed Tyre to gain illicit control of the automobile that crashed into his truck. Because the necessary duty of care, and proximate cause, are lacking as a matter of law, no such negligence claim will avail on these facts.
            Even if the Court were inclined to locate in the Amended Complaint a basis for some legal duty owed to Freni by Rocho, the facts as pleaded are bereft of evidence that would sustain a finding of negligence on the part of this Defendant. The Amended Complaint and Plaintiff’s Opposition fulminate at length on the failure of Uber to train its drivers on how to manage unruly passengers, and on the company’s failure to require ride-share vehicles to be equipped with engine kill switches and protective partitions such as might insulate drivers from assaultive behavior by passengers. But conceding for purposes of argument only that these failures might suggest negligence on the part of a carrier like Uber, such negligence cannot be imputed to an individual driver like Rocho. The doctrine of respondeat superior repeatedly invoked by Freni permits vicarious liability to attach to an employing entity for torts committed by agents acting within the scope of its employ. See Dias v. Brigham Med. Assocs., 438 Mass. 317, 319-20 (2002). The doctrine does not, however, render individual agents such as Rocho personally liable for the tortious acts and omissions of their upstream employers.
            The only purportedly negligent conduct attributed to Rocho in this case is his decision to exit an automobile while it was still running, fleeing the violence of a passenger who had begun to verbally and physically assault him. The undersigned concludes that no reasonable trier of fact could find such an action to be so unreasonable as to render Rocho liable for Tyre’s ensuing theft of the automobile and collision with Freni’s truck. Rocho was, after all, the primary victim of Tyre’s criminal aggression. It simply proves too much for the law to demand that Rocho either
                                                            -7-
fight off an assailant at his peril, or display the presence of mind to safeguard an automobile’s car keys while he is under physical attack. If our courts will not hold individuals legally responsible for the conduct of third-party criminals whose misconduct was facilitated by their having left car keys in an unattended vehicle, see supra, it is dubious that the law will expect more of an individual like Rocho – forced to flee a running vehicle to escape physical violence being inflicted on him in real time by such a criminal.
            Freni’s extensive reliance on Jupin v. Kask, 447 Mass. 141 (2006), for the proposition that Rocho owed him a duty of care to guard against the criminal misdeeds of Tyre is misplaced. In Jupin, the plaintiff brought a negligence action against a homeowner who resided with the father of a young adult who shot and killed the plaintiff’s decedent (a police officer attempting to serve an arrest warrant on him). 447 Mass. at 142. After acknowledging the general rule that “there is no duty to protect others from the criminal or wrongful activities of third persons,” id. at 148 (citation omitted), the Court concluded that the unusual facts of the case implicated an exception to this proposition. In Jupin, the Court confronted a situation in which the defendant homeowner knew that an individual (her partner’s son) who enjoyed regular and unsupervised access to her home had a history of mental instability and violence. Id. at 151. That individual had previously assaulted a college professor (leading to his psychiatric institutionalization), assaulted a former girlfriend (leading him to serve a committed prison sentence), had gone absent without leave from the U.S. Army (leading to his discharge from the service), and presently occupied a status of court-supervised probation. Id. at 145. The defendant homeowner was likewise aware that this troubled individual had experience with, and a continuing interest in, firearms, and that her partner stored more than 30 weapons in her home within an unsecured gun cabinet that could be easily breached. Id. at 144-45.
                                                            -8-
            In these circumstances, the Court held that “a homeowner who permits guns to be stored on her property, and allows unsupervised access to that property by a person known by her to have a history of violence and mental instability, has a duty of reasonable care to ensure that the guns are properly secured.” Id. at 143. “[T]he risk in the instant case – that a mentally unstable and violent person, to whom unfettered and unsupervised access to [the defendant’s] home was granted, would take a gun from the home and shoot someone – was both foreseeable and foreseen.” Id. at 149. Central to the Court’s recognition of a duty of care in this case were the homeowner’s personal connection to the wrongdoer, her awareness of the potential dangers he posed, and the informed decisions that she made to enable his access to guns: “The imposition of a duty in the instant case is predicated on the affirmative permission [the defendant] gave [her partner] to store firearms on her property for an extended period of time, knowing that an unstable and violent person had regular and unsupervised access to the property.” Id. at 152. These facts, in combination with the heightened care that is due in any handling of a “dangerous instrumentality” such as a firearm, see id. at 151, led the Court to carve out an exception to the no-duty rule based on principles of public policy. Id. at 151-56.
            The facts of the present case are readily distinguished from the foregoing, and remove Freni’s negligence claim against Rocho from the principle expounded in Jupin. Here, Rocho had no foreknowledge of Tyre’s dangerous propensities at the time he responded to his ride-share request. More importantly, Rocho’s flight to safety when Tyre began to assault him with physical violence can hardly be likened to the giving of “affirmative permission” to Tyre to take control of his automobile. There was no such permission, or any action by Rocho that can fairly be considered voluntary. The Amended Complaint itself repeatedly characterizes Tyre’s seizure of the Uber vehicle as a “carjacking,” and Rocho’s duress-borne decision to abandon the vehicle
                                                            -9-
rather than continue to face assault and battery from Tyre can in no rational sense be deemed a failure of duty giving rise to negligence liability.[4]
CONCLUSION AND ORDER
            For the foregoing reasons, the Plaintiff’s negligence claim against Defendant Rocho fails to state a claim upon which relief can be granted. Rocho owed no cognizable duty to protect Freni against the harms caused by Tyre’s criminal misconduct; and Rocho’s decision to leave his Uber vehicle in the possession of Tyre rather than continue to suffer violence at his hands was not the proximate cause of Freni’s injuries in the ensuing automobile collision. Essential elements of a negligence cause of action against Rocho thus lacking, the claim asserted against this Defendant in Count I of the Amended Complaint shall be dismissed.
SO ORDERED.
@/s/Robert B. Gordon Justice of the Superior Court
@August 10, 2021
-------------------------------------
[4] Had Jupin involved an unknown home invader who broke into the defendant’s residence, assaulted and battered her until she fled the home, and then took a weapon from an unsecured gun cabinet and committed a crime with it, the SJC would surely have decided it differently. Those, of course, are essentially parallel to the facts of the case at bar.
                                                            -10-
 
 
xxz